**Daryl STANDLEE, Petitioner,**

v.

**B. J. RHAY, Superintendent of the Washington State Penitentiary, Respondent.**

No. C–75–18.

United States District Court, E. D. Washington.

Nov. 7, 1975.

Phillip H. Ginsberg and Linda Potter, Seattle, Wash., for petitioner.

Slade Gorton, Atty. Gen., Thomas W. Hayton, Asst. Atty. Gen., Olympia, Wash., for respondent.

## MEMORANDUM AND ORDER GRANTING WRIT

NEILL, Chief Judge.

Petitioner seeks a writ of habeas corpus in this Court after being denied such relief in state court.

Petitioner was convicted of rape in 1959 in the Washington State Superior Court for Benton County and sentenced to a maximum of sixty years imprisonment. He was paroled from the Washington State Penitentiary September 28, 1970. On February 3, 1971 he was arrested for an alleged abduction and assault with intent to rape in Seattle, Washington. A parole revocation hearing based on the new criminal charges was commenced but petitioner chose not to reveal the identity of his alleged alibi witnesses. At the request of his counsel, the hearing was continued pending the outcome of petitioner's prosecution for the new offenses in King County Superior Court.

At petitioner's bench trial in King County Superior Court, the victims of the alleged assault positively identified him as the man who had abducted and attempted to rape them. However, petitioner's girlfriend and a woman from Portland, Oregon came forth and testified he had been in Portland the night the alleged offenses occurred in Seattle. Based on this alibi testimony, and specifically on the "appearance and demeanor" of the Portland woman as she testified, the trial court found a "reasonable doubt . . . as to whether or not this defendant was the man who committed the offense." Therefore, petitioner was acquitted of all the charges against him.

Following petitioner's acquittal, the Parole Board reconvened its hearing and considered the same evidence presented at the trial, with the exception that the trial transcript of the Portland woman's testimony was read into the record in lieu of her live testimony. The transcript was used because petitioner allegedly could not afford to pay her travel costs. At the close of the hearing, the hearing officer found that, by a preponderance of the evidence, petitioner had committed the assaults and attempted rapes. On June 21, 1971, the hearing officer found that this conduct violated petitioner's conditions of parole. Based on these violations, petitioner's parole was revoked and he was recommitted to a fifteen year sentence commencing June 21, 1971.

Petitioner exhausted his state remedies via petitions for writs of habeas corpus in the Washington Court of Appeals and Washington State Supreme Court. These petitions were denied. *Standlee v. Smith,* 83 Wash.2d 405, 518 P.2d 721 (1974).

Petitioner's contentions here are identical to those raised in his state habeas corpus petition. He argues that the revocation of his parole following acquittal in superior court on identical charges violated the doctrine of collateral estoppel as embodied in the Double Jeopardy Clause of the Fifth Amend-

ment, *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and as applied to the states through the Fourteenth Amendment Due Process Clause. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Further, petitioner argues that his inability to pay the travel costs to enable the Portland woman to testify in person at his revocation hearing denied him equal protection of the laws in violation of the Fourteenth Amendment.

This Court is persuaded that the Writ must issue. Although there is no binding precedent clearly on point, a long line of Supreme Court decisions dealing with the civil imposition of punitive sanctions based on criminal conduct indicates that collateral estoppel bars the Parole Board from relitigating the fact of petitioner's guilt. Further, the concept of due process as it has recently been molded and fashioned in the area of probation and parole revocations likewise dictates this result.

In *Ashe v. Swenson, supra,* the Supreme Court held that collateral estoppel inheres in the Double Jeopardy Clause to prevent relitigation in separate criminal prosecutions of facts necessary to each for a conviction. The *Ashe* court characterized collateral estoppel as

. . . when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

397 U.S. at 443, 90 S.Ct. at 1194. The *Ashe* court held that, after a defendant had once been acquitted of robbing one of six persons, all of whom had been simultaneously robbed by the same three or four men, the state could not subsequently prosecute him for robbing one of the other six. The court reasoned that the acquittal could only have been based on a jury finding that the defendant was not one of the men who committed the robberies. Therefore, collateral estoppel barred a subsequent finding to the contrary because relitigation of this fact would have forced the defend-

ant to "run the gantlet" again. *Id.* at 446, 90 S.Ct. 1189.

■■ This Court does not conclude that petitioner's criminal prosecution and subsequent revocation based on the same conduct constitutes double jeopardy in the usual sense of that term where a person is prosecuted twice by the State for the same offense. *Jones v. Breed,* 497 F.2d 1160 (9th Cir. 1974). Such a conclusion would contravene the traditional notion that revocation of parole is a continuing consequence of the original conviction from which parole was granted and is not a consequence of the offense on which the revocation is based. *Brown v. Warden, United States Penitentiary,* 351 F.2d 564, 567 (7th Cir. 1965), *cert. denied* 382 U.S. 1028, 86 S.Ct. 651, 15 L.Ed.2d 541 (1966), *United States ex rel. Carioscia v. Meisner,* 331 F.Supp. 635, 645 (N.D.Ill., E.D.1971). Rather, *Ashe* defines the principle that double jeopardy can occur in another sense when an ultimate fact upon which a person's freedom depends is litigated twice between him and the State, irrespective of whether that fact is litigated in the context of the same or different offenses. In this important respect *Ashe* broadens the concept of double jeopardy to encompass the situation presented in this case where the initial criminal charge and subsequent parole revocation are technically based on the commission of wholly separate offenses, but where the same facts are determinative of guilt for each:

The question is not whether Missouri could validly charge the petitioner with six separate offenses for the robbery of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again.

*Ashe v. Swenson,* 397 U.S. at 446, 90 S.Ct. at 1195.

The Parole Board and State Supreme Court distinguished *Ashe* on the ground that it involved two criminal prosecutions based on the same incident, whereas petitioner here was subjected first to a criminal prosecution and then to a parole revocation. Relying on *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938) and *Neaderland v. Commissioner,* 424 F.2d 639 (2d Cir. 1970), the Parole Board reasoned and the Washington State Supreme Court held that the lesser burden of proof applicable to parole revocations vis-a-vis criminal prosecutions precluded application of collateral estoppel and permitted the Parole Board to find by a preponderance of the evidence that petitioner had committed the alleged offenses, even though the state court had found a reasonable doubt as to his guilt. 83 Wash.2d at 408–409, 518 P.2d 721. Respondent State of Washington urges this Court to follow the reasoning of the Washington State Supreme Court.

Conversely, petitioner cites *Barrows v. Hogan,* 379 F.Supp. 314 (M.D.Pa. 1974) and *People v. Grayson,* 58 Ill.2d 260, 319 N.E.2d 43 (1974) in support of his contention. In *Barrows v. Hogan, supra* the court held that, where a prison inmate had been acquitted by a jury of an alleged assault on a federal officer, prison officials could not deprive him of good time credits by finding him guilty of the same offense under a lesser burden of proof. The *Barrows* court found the lesser burden of proof argument, urged herein by respondents, to be "not persuasive" in light of the fact that petitioner in that case would have been released immediately but for the loss of good time credit. Since the petitioner's loss resulted in "an immediate deprivation of liberty", the court found the requirements of due process "more urgent" and dis-

tinguished the usual good time forfeiture situations where a prisoner's rights are more limited. *Barrows, supra* 379 F. Supp. at 316.

Similarly in *People v. Grayson, supra,* the Illinois Supreme Court held that the doctrine of collateral estoppel precluded the state from revoking a defendant's probation for an alleged robbery after the defendant had been acquitted of the same charge in state court. The Illinois court acknowledged the lesser burden of proof applicable to probation revocations, but relied on *Ashe v. Swenson, supra* to hold that relitigation of the same issue was barred by collateral estoppel, irrespective of the lesser burden of proving a probation violation. 319 N.E.2d at 45. The court stated:

> Although proceedings may be civil in form they may be criminal in nature, (*United States v. United States Coin and Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434), and the individual facing probation revocation may lose his liberty just as swiftly and surely as a defendant in a criminal case.

319 N.E.2d at 45–46.

The reasoning in support of the holdings in *Barrows* and *Grayson* is not set forth in detail, but is apparently founded on general concepts of fundamental fairness and due process. However, it is important to note that the *Grayson* court relied on *United States v. United States Coin and Curency, supra,* when it recognized the criminal nature of certain civil proceedings. That case and similar decisions of the Supreme Court support the conclusion that the doctrine of collateral estoppel bars revocation of parole following an acquittal of identical criminal charges.[1]

In *Coffey v. United States,* 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684 (1886), an aging but viable decision, the Supreme

---

1. The Court has reviewed the briefs and record in the state court proceedings and notes that none of the forfeiture cases discussed herein were called to the attention of the Washington Supreme Court in *Standlee v. Smith, supra.* Therefore, the State Supreme Court did not receive the benefit of the case law which is integral to this Court's holding.

Court held that the principle of res judicata barred a punitive forfeiture of property following an acquittal of criminal charges arising from the same conduct that formed the basis of the forfeiture. The vitality of *Coffey* and its relation to *Ashe v. Swenson, supra,* were recently recognized by the Ninth Circuit Court of Appeals in *United States v. One 1967 Cadillac El Dorado,* 453 F.2d 396 (9th Cir. 1971). In that case the Government had instituted forfeiture proceedings against an automobile allegedly used to transport marijuana, in spite of the owner's prior acquittal of criminal charges based on the same alleged activity. Relying on *Coffey* and *Ashe,* the Court of Appeals held that acquittal of closely related criminal charges barred the civil forfeiture proceeding, irrespective of the difference in the burdens of proof applicable to each proceeding.[2]

■ Essential to the court's holding in *Coffey* was the finding that the forfeiture action, though civil in form, was a punitive sanction. This finding rested in part on the fact that both criminal and civil sanctions were contained in the same statute. Subsequently, in *Stone v. United States,* 167 U.S. 178, 17 S.Ct. 778, 42 L.Ed. 127 (1897), the Court reiterated with emphasis that *Coffey* bars relitigation of facts ascertained in a criminal action only where the Government seeks to relitigate such facts in a civil context " 'as the basis of any statutory punishment.' " (emphasis in original) *supra* at 186, 17 S.Ct. at 781. Therefore, the rule of *Coffey* bars relitigation of fact issues where an acquittal of a criminal charge is followed by a closely related civil penalty that imposes a punitive sanction or, as stated in *Stone v. United States, supra,* where the civil

proceeding is "quasi-criminal". 167 U.S. at 187, 17 S.Ct. 778. On the other hand, collateral estoppel does not apply where the civil sanction is purely remedial.

The distinction between civil proceedings that are purely remedial and those that impose a punishment for criminal conduct has been maintained in decisions of the Supreme Court dating from *Coffey* to the present. The Court has consistently upheld the Government's right to punish civilly for criminal acts, irrespective of the lesser burden of proof applicable to civil proceedings, *Hepner v. United States,* 213 U.S. 103, 29 S.Ct. 474, 53 L.Ed. 720 (1909), *United States v. Regan,* 232 U.S. 37, 34 S.Ct. 213, 58 L.Ed. 494 (1914), but in every instance where the civil sanction was found to be punitive the Court required the application of constitutional protections that are normally available only in criminal prosecutions.

In *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the Court recognized:

. . . proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal.

*Boyd, supra* at 634, 6 S.Ct. at 534. Relying on *Coffey v. United States, supra,* the Court held the Fourth Amendment and the Fifth Amendment privilege against self-incrimination applicable to forfeitures based on criminal conduct.

Similarly, in *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) the Court noted:

. . . a forfeiture proceeding is quasi-criminal in character. Its ob-

**2.** The holding of *One 1967 Cadillac El Dorado* was questioned in a subsequent Ninth Circuit decision, *United States v. Kismetoglu,* 476 F.2d 269 (9th Cir. 1973). However, the holding in *Kismetoglu* rested on the Supreme Court's determination in *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 237, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972), that the forfeiture provisions contained in 19

U.S.C. §§ 1497 and 1592 are purely remedial and not punitive. Since the Court is satisfied that revocation of parole is a punitive sanction, *Kismetoglu* does not affect the applicability of *One 1967 Cadillac El Dorado* to the facts of this case. A discussion of the importance of the distinction between remedial and punitive civil sanctions follows.

ject, like a criminal proceeding, is to penalize for the commission of an offense against the law.

*supra* at 700, 85 S.Ct. at 1250. Therefore, since the forfeiture imposed a penalty for criminal conduct, the Court held the exclusionary rule applicable to the forfeiture proceeding:

> It would be anomalous, indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible. . . .
>
> \* \* \* \* \* \*
>
> In sum, we conclude that the nature of a forfeiture proceeding, so well described by Mr. Justice Bradley in *Boyd*, . . . support[s] the conclusion that the exclusionary rule is applicable to forfeiture proceedings such as the one involved here.

*One 1958 Plymouth Sedan, supra* at 701–702, 85 S.Ct. at 1251.[3] *See also, Lees v. United States,* 150 U.S. 476, 14 S.Ct. 163, 37 L.Ed. 1150 (1893), *United States v. La Franca,* 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551 (1931).

In the recent case of *United States v. United States Coin and Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the Court reaffirmed its holding in *Boyd* and *One 1958 Plymouth Sedan* and held the Fifth Amendment applicable to a forfeiture proceeding because it was "intended to impose a penalty only upon those who are significantly involved in a criminal enterprise", *supra* at 721–722, 91 S.Ct. at 1045. In *One Lot Emerald Cut Stones v. United States, supra,* the court noted the inapplicability of *One 1958 Plymouth Sedan* on the

ground that the forfeiture provision at issue was not punitive, whereas the punitive forfeiture in *One 1958 Plymouth Sedan* was based on "a 'determination that the criminal law has been violated' [citing *One 1958 Plymouth Sedan,* 380 U.S. at 701, 85 S.Ct. at 1251]." 409 U.S. at 236, n. 6, 93 S.Ct. at 492.

Conversely, the Supreme Court has consistently held that such constitutional protections are unavailable to defendants who are subjected to purely remedial civil sanctions imposed following an acquittal of related criminal charges, but in every such case the court emphasized that the civil sanction at issue was imposed merely to recoup actual losses and not as a penalty for criminal conduct. *Stone v. United States, supra; Murphy v. United States,* 272 U.S. 630, 47 S.Ct. 218, 71 L.Ed. 446 (1926); *Helvering v. Mitchell, supra; United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943); *Rex Trailer Co., Inc. v. United States,* 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956); *One Lot Emerald Cut Stones v. United States, supra.* These decisions preserve the distinction, created in *Coffey v. United States, supra,* between punitive and remedial sanctions, and, by negative implication, they support the holding of *Coffey* that collateral estoppel would apply if the civil sanctions were found to be punitive.

Petitioner's case is analogous to the "punitive" forfeiture cases discussed above, for his parole revocation was based on "a determination that the criminal law had been violated", and in both situations a civil proceeding with a preponderance of evidence burden of proof was used to impose the penalty. Therefore, just as in the case of a punitive for-

---

3. The Court is aware of the Ninth Circuit's recent holding in *United States v. Winsett,* 518 F.2d 51 (9th Cir. 1975), that the exclusionary rule does not apply to probation revocation hearings unless the police knew of the probationary status of the probationer at the time of the illegal search and seizure. However, any conflict which may exist between this holding and the Court's reliance on *One* *1958 Plymouth Sedan, supra,* is resolved by the Supreme Court's decision in *Harris v. Washington,* 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971), which held collateral estoppel applicable "irrespective of whether the jury considered all relevant evidence, and irrespective of the good faith of the State in bringing successive prosecutions." *Id.* at 57–58, 92 S.Ct. at 184.

feiture, the prior finding of innocence under a higher burden of proof collaterally estops the State from an inconsistent adjudication of fact under a lesser burden of proof. *Coffey v. United States, supra, United States v. One 1967 Cadillac El Dorado, supra.* Therefore, this Court is in agreement with the Illinois court's holding that

> Once the ultimate and only disputed fact of identity had been determined by a final and valid judgment, the State could not constitutionally hale defendant before a new court in a criminal proceeding or a probation revocation proceeding and litigate that issue again. [citing *Ashe v. Swenson, supra*]

*People v. Grayson,* 319 N.E.2d at 46.

█ It remains for the Court to forge the final link in its chain of reasoning by finding that revocation of parole is a punitive, as opposed to remedial sanction, and "[t]hat question is one of statutory construction". *Helvering v. Mitchell,* 303 U.S. 399, 58 S.Ct. 633, *One Lot Emerald Cut Stones v. United States,* 409 U.S. at 237, 93 S.Ct. 489. Therefore, the resolution of this issue requires an initial examination of the statutory relationship between the criminal and civil sanctions as well as an examination of the Supreme Court's characterization of parole revocations.

In *Coffey v. United States, supra,* the fact that the civil and criminal sanctions were contained in the same statute was considered decisive of the determination that the forfeiture action was actually a form of punishment in spite of its civil form and lesser burden of proof. 116 U.S. at 442–443, 6 S.Ct. 437. Conversely, in subsequent decisions of the Court the fact that the criminal statute and forfeiture provisions were contained in separate and distinct parts of the United States Code was considered "relevant in determining the character of the forfeiture", *One Lot Emerald Cut Stones,* 409 U.S. at 236–237, 93 S.Ct. at 493; *Helvering v. Mitchell,* 303 U.S. 404–405, 58 S.Ct. 630; *Rex Trailer Co., Inc. v.*

*United States,* 350 U.S. at 151–152, 76 S.Ct. 219. Accordingly, the *Helvering* court found no reason for frustrating that design, 303 U.S. at 404–405, 58 S. Ct. 630, and concluded that the fifty percent tax penalty was a remedial sanction "provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." (citations omitted) *Id.* at 401, 58 S.Ct. at 634. Similarly, in *One Lot Emerald Cut Stones,* the court discussed at length the statutory relationship between the smuggling and forfeiture statutes and noted:

> The fact that the sanctions were separate and distinct and were contained in different parts of the statutory scheme is relevent in determining the character of the forfeiture. Congress could and did order both civil and criminal sanctions, clearly distinguishing them. There is no reason for frustrating that design. [citing *Helvering v. Mitchell, supra*]

409 U.S. at 236–237, 93 S.Ct. at 493.

In this case, petitioner was charged with and acquitted of two counts of second degree assault "with a weapon or thing likely to produce bodily harm and a deadly weapon as defined by R.C.W. 9.95.040 . . ." Chapter 9.95 of the Code also contains the provision that authorized petitioner's parole revocation, R.C.W. 9.95.120 (1974), and Title 9 of the Revised Code of Washington, entitled "Crimes and Punishments", contains all of Washington's criminal statutes. Therefore, the close statutory connection between petitioner's criminal prosecution and parole revocation would indicate that the parole revocation is a quasi-criminal sanction intended to impose a punishment for criminal acts.

Of greater importance, however, is the Supreme Court's implicit recognition that revocation of probation and parole has evolved into a quasi-criminal proceeding. The court acknowledged in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct.

259, 33 L.Ed.2d 484 (1972), that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations", 408 U.S. 480, 92 S.Ct. 2600, but in holding that parole may not be revoked without the due process protections of the Fourteenth Amendment, the court recognized

> . . . that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a 'right' or a 'privilege'. By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment.

408 U.S. at 482, 92 S.Ct. at 2601.

Accordingly, the *Morrissey* court held that parole could not be revoked without: (1) written notice of the alleged violations; (2) disclosure of the evidence against the parolee; (3) opportunity to be heard in person and present witnesses and documentary evidence; (4) the right to confront and cross-examine the witnesses against him (unless there is good cause shown for not allowing confrontation); (5) a "neutral and detached" hearing body; and (6) a written statement by the factfinder as to the evidence relied on and the reasons for revoking parole. 408 U.S. at 489, 92 S.Ct. 2593. In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the court extended these rights to probation revocations and added the right to appointment of counsel in appropriate cases.

■ Therefore, while the parole revocation procedure has retained its civil label, the parolee has increasingly enjoyed the rights of a defendant in a criminal trial, albeit in a modified form. The existence of such constitutional protections is itself indicative of the punitive nature of the proceeding. *Coffey v. United States, supra; Boyd v. United States, supra; One 1958 Plymouth Sedan v. United States, supra; United States v. United States Coin and Currency, supra.* The Supreme Court plainly did not characterize revocation of parole as a remedial sanction, but rather emphasized the grievousness of the loss inflicted when parole is revoked, *Morrissey, supra* 408 U.S. at 482, 92 S.Ct. 2593, and noted that in some cases the role of the parole board "become[s] more akin to that of a judge at a trial" *Gagnon, supra* 411 U.S. at 787, 93 S.Ct. at 1762, as where "after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty . . ." *Id.* 790, 93 S.Ct. 1764. The inescapable conclusion is that revocation of parole fits into the category of punitive, as opposed to purely remedial sanctions, especially when the alleged violation involves the commission of a new offense. *See One Lot Emerald Cut Stones, supra* 409 U.S. at 236, n. 6, 93 S.Ct. 489.

The *Morrissey* court appears to have impliedly recognized that, where commission of a crime is the alleged basis for a parole revocation, the Parole Board is put to an election between proceeding with its own adjudication of guilt or deferring to the courts:

> Sometimes revocation occurs when the parolee is accused of another crime; it is often preferred to a new prosecution because of the procedural ease of recommitting the individual on the basis of a lessor showing by the State.

408 U.S. at 479, 92 S.Ct. at 2599. The Court also acknowledged the "two-edged" nature of this principle:

> Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented where the revocation is based on a conviction of another crime.

*Id.* at 490, 92 S.Ct. at 2605.

At least one other court has recognized in dictum that a parole board should be bound in its proceedings by a prior adjudication of innocence in a criminal prosecution:

> When the Board is called upon to deal with a parolee whose only alleged parole violation is the commission of a new crime, however, its role changes significantly. No longer is it the only finder of fact. Indeed, at the first stage of the final revocation process, it is not a finder of fact at all. The crucial and 'wholly retrospective factual question' that must be answered *Morrissey v. Brewer, supra,* 408 U.S. [471] at 479, 92 S.Ct. 2593 [33 L.Ed. 2d 484], is whether a parole violation has occurred, in other words, whether the parolee has in fact committed a new crime. The Board does not answer that question; the criminal justice system does, . . .

*United States ex rel. Burgess v. Lindsey,* 395 F.Supp. 404, 410 (E.D.Pa. 1975). Washington law similarly reflects the different function played by the Board of Prison Terms and Paroles in cases where the parole revocation is based on and preceded by a criminal prosecution. The statute governing hearings on parole revocations provides that a parolee has no right to a "fair and impartial hearing" on the fact of a violation once he has been convicted of a felony or misdemeanor. R.C.W. 9.95.120 (1974). Similar provisions govern the revocation of parole by the federal government. 28 C.F.R. §§ 2.54–2.56 (1975).

■ The circumstances of this case require an a fortiori application of the reasoning discussed above, for the close similarity between petitioner's prosecution and related parole revocation was especially offensive to the concept of "fundamental fairness—the touchstone of due process". *Gagnon, supra* 411 U.S. at 790, 93 S.Ct. at 1763. Petitioner's case represents the extreme to which the adversarial process can be carried in a revocation hearing for he was represented by counsel and the State was represented by its Attorney General. Petitioner's criminal trial on identical charges imbued the revocation hearing with the aura of a criminal trial because the same evidence was heard at each proceeding, except that the trial transcript of one of petitioner's alibi witnesses was used in lieu of her live testimony. At the revocation hearing as at the trial the sole issue was whether petitioner had committed criminal offenses, and not whether he was guilty of technical parole violations. This was clearly a case where the role of the parole board became "more akin to that of a judge at a trial". *Id.* at 787, 93 S.Ct. at 1762.

Further, in acquitting petitioner of the criminal charges against him the trial judge noted of the Portland woman's testimony:

> You heard her testimony as I did and to me her testimony is the one that weighed the scales of balance, whichever way they would fall. *I think they were evenly divided before she testified* . . . (emphasis supplied).

At a different point in the record the trial judge expounded in detail on the credibility and convincing demeanor of this witness, whose presence was not available to the Parole Board at its subsequent hearing. Under these circumstances the State cannot be allowed to rely on the different labels attached to the two proceedings to justify their action, which in any other context would constitute a gross violation of the collateral estoppel doctrine.

■ It should be noted that the Court's holding will not impair the usual operations of the Parole Board. The Board remains free to exercise its fact-finding powers to revoke parole under its normal procedures, including the preponderance of evidence burden of proof and lax rules of evidence except in those instances, as here, where the Parole Board deliberately accedes to the criminal prosecution. In such latter cases the Board may not then reach an *inconsistent* finding and conclusion.

The Court's holding makes it unnecessary to consider petitioner's equal protection claim based on the alleged denial of travel costs for his witness to attend the parole revocation hearing.

.Wherefore, it is hereby ordered that the Writ of Habeas Corpus shall issue and the petitioner dicharged from institutional custody to a parole status. The Clerk shall enter judgment in accordance herewith.