[No. 43917.   En Banc.   May 27, 1976.]

DIANE BECKETT, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

*Patrick H. McIntyre* of *Legal Services Center* (Seattle), for appellant.

*Slade Gorton, Attorney General,* and *Randall Rubenstein* and *Walter E. White, Assistants,* for respondent.

HUNTER, J.—The appellant, Diane Beckett, appeals from

a King County Superior Court order affirming respondent Department of Social and Health Services' administrative decision that appellant's prior acquittal in a criminal proceeding did not bar the respondent from levying a fraudulent overpayment against appellant based on the same factual circumstances.

The facts of this case are not disputed. During the period of January 1971, through April 1972, the appellant received an overpayment of public assistance funds under the Aid for Dependent Children program. Based on these circumstances, she was charged with the fraudulent receipt of public assistance monies and tried for grand larceny. In March 1973, she was acquitted of that charge. Respondent then notified the appellant that it was assessing a fraudulent overpayment against her in the amount of 125 percent of the assistance received during the period in question and that this amount would be collected by deducting 10 percent from her subsequent monthly assistance grants.[1] Ap-

---

[1] RCW 74.04.300 provides for this procedure as follows:

"If a recipient receives public assistance for which he is not eligible, or receives public assistance in an amount greater than that for which he is eligible, the portion of the payment to which he is not entitled shall be a debt due the state: *Provided,* That if any part of any assistance payment is obtained by a person as a result of a wilfully false statement, or representation, or impersonation, or other fraudulent device, or wilful failure to reveal resources or income, one hundred twenty-five percent of the amount of assistance to which he was not entitled shall be a debt due the state and shall become a lien against the real and personal property of such person from the time of filing by the department with the county auditor of the county in which the person resides or owns property, and such lien claim shall have preference to the claims of all unsecured creditors. It shall be the duty of recipients of public assistance to notify the department within twenty days of the receipt or possession of all income or resources not previously declared to the department, and any failure to so report shall be prima facie evidence of fraud: *Provided further,* That there shall be no liability placed upon recipients for receipt of overpayments of public assistance which result from error on the part of the department and no fault on the part of the recipient in obtaining or retaining the assistance if the recovery thereof would be inequitable as determined by the director or his designee.

"Debts due the state pursuant to the provisions of this section, may be recovered by the state by deduction from the subsequent assistance

pellant requested and received an administrative hearing at which the respondent considered only the question of whether appellant's prior acquittal in the criminal proceeding barred it from levying a fraudulent overpayment based on the same factual circumstances. The question of whether the appellant had received public assistance as a result of fraudulent misrepresentation was deferred. On May 30, 1973, respondent ruled that it was not barred from proceeding and remanded the case for consideration of the other factual and legal issues. On appeal, the Superior Court rejected appellant's contentions that the doctrines of collateral estoppel and double jeopardy barred respondent from proceeding, and in its order of July 29, 1974, affirmed respondent's administrative determination and remanded the matter to respondent for further proceedings. It is from this order that appellant appeals.

◼ Appellant first contends that because of her acquittal in a prior criminal proceeding, the doctrine of collateral estoppel bars the respondent from assessing a fraudulent overpayment based on the same factual circumstances. Generally speaking, collateral estoppel bars relitigation between the same parties of already determined facts or issues, and among other essential requirements, the doctrine requires a concurrence of identity of cause of action. *See Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 395, 429 P.2d 207 (1967). As discussed below, this requirement is not met in the present situation because the two proceedings in question require different burdens of proof.

◼ The standard of proof in civil fraud cases, including the proceedings instituted by respondent in this case pursuant to RCW 74.04.300, is "clear, cogent, and convincing" evidence. *See Hughes v. Stusser*, 68 Wn.2d 707, 709, 415 P.2d 89 (1966); *Baertschi v. Jordan*, 68 Wn.2d 478, 483, 413 P.2d 657 (1966); *Williams v. Joslin*, 65 Wn.2d 696, 697, 399 P.2d 308 (1965); *Bland v. Mentor*, 63 Wn.2d 150, 154, 385

---

payments to such persons or may be recovered by a civil action instituted by the attorney general." *See* WAC 388-44-035; WAC 388-44-145.

P.2d 727 (1963). This standard and the "beyond a reasonable doubt" standard applicable to criminal proceedings are not the same and do not connote the same amount of proof. *See Bland v. Mentor, supra* at 154; Weihl, *Our Burden of Burdens*, 41 Wash. L. Rev. 109, 112-13 (1966).

We are cognizant of our opinion in *In re Levias*, 83 Wn.2d 253, 256, 517 P.2d 588 (1973). We did there say that the clear, cogent, and convincing test was a "civil counterpart of the criminal reasonable doubt standard," but this must be read in context with the language following in the opinion wherein we stated that

> the clear, cogent, and convincing test applicable in mental illness proceedings *exacts the duty that every element essential to proving committable mental illness be demonstrated to a degree essentially corresponding to that necessary for commitment in criminal proceedings.* Any lesser standard of proof permits a deprivation of personal liberty through improper suspension of the strict requirements of due process.

(Footnotes omitted. Italics ours.) We then in the footnote specifically preserved the above mentioned distinction in the degree of proof we recognized in *Bland* between the "beyond a reasonable doubt" standard and the "clear, cogent, and convincing" standard applied in civil fraud cases.

In *Standlee v. Smith*, 83 Wn.2d 405, 407, 518 P.2d 721 (1974), we recently discussed the application of collateral estoppel in a situation involving differing burdens of proof. There we applied "the rule that a difference in the degree of the burden of proof in the two proceedings precludes application of collateral estoppel" and held that collateral estoppel did not prohibit parole revocation based on the same factual circumstances that had resulted in an acquittal in a prior criminal proceeding.[2] *See Standlee v. Smith,*

---

[2]The result of our decision in *Standlee v. Smith*, 83 Wn.2d 405, 518 P.2d 721 (1974), was superseded by *Standlee v. Rhay*, 403 F. Supp. 1247 (E.D. Wash. 1975), which granted petitioner's writ of habeas corpus. The federal district court opinion, however, does not disturb our discussion of the doctrine of collateral estoppel in *Standlee v. Smith, supra*, as applied to civil proceedings. In fact, the opinion specifically recognized the continuing nonapplication of collateral estop-

*supra* at 407, 409. The principles discussed in *Standlee* are directly applicable to the present case. The burden of proof in appellant's prior criminal proceeding was different from the burden of proof applicable to the civil fraud proceeding instituted by respondent pursuant to RCW 74.04.300. Therefore, we hold that collateral estoppel does not prohibit the second proceeding.

■ Appellant's second contention is that the doctrine of double jeopardy prohibits respondent from assessing a fraudulent overpayment. The purpose of the doctrine is to protect an accused from being twice put in jeopardy for the same offense. *See State v. Ridgley*, 70 Wn.2d 555, 557, 424 P.2d 632 (1967). Double jeopardy does not apply, however, unless the sanction sought to be imposed in the second proceeding is punitive in nature so that the proceeding is essentially criminal. *See Helvering v. Mitchell*, 303 U.S. 391, 398, 82 L. Ed. 917, 58 S. Ct. 630 (1938).

■ The legislature may provide for both civil sanctions and criminal penalties in the same act without thereby converting the civil proceeding to a criminal or penal one. *See Helvering v. Mitchell, supra* at 399; *Yakima County Clean Air Authority v. Glascam Builders, Inc.*, 85 Wn.2d 255, 260, 534 P.2d 33 (1975); *State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.*, 82 Wn.2d 265, 278, 510 P.2d 233 (1973). The dispositive issue, therefore, is whether or not the civil fraud proceeding authorized by RCW 74.04.300 imposes a criminal sanction, and that question is simply one of statutory construction. *See Helvering v. Mitchell, supra.*

■ The language of RCW 74.04.300 to be considered provides:

> That if any part of any assistance payment is obtained by a person as a result of a wilfully false statement, or representation, or impersonation, or other fraudulent device, or wilful failure to reveal resources or income, one

pel to civil remedial sanctions involving differing burdens of proof and the court reached its result because of the quasi-criminal nature of the parole revocation hearing at issue in that case. *See Standlee v. Rhay, supra* at 1251.

hundred twenty-five percent of the amount of assistance to which he was not entitled shall be a debt due the state . . .

Based on the following factors, we construe this language as providing a remedial, rather than a punitive, sanction. RCW 74.04.300 is separate and distinct from RCW 74.08.331,[3] the statutory section that clearly defines the fraudulent receipt of public assistance as grand larceny and imposes criminal penalties including imprisonment for up to 15 years. The sanction provided in RCW 74.04.300 is implemented by a civil rather than a criminal proceeding and the debt created thereunder is recoverable by a civil action. We therefore conclude that the legislature intended RCW 74.04.300 as a remedial measure; it was provided primarily to safeguard state revenues and reimburse the State for the expense of investigation and the loss resulting from the public assistance recipient's fraud. Clearly, the sanction contained in RCW 74.04.300 was meant to be civil rather than criminal in nature. *Cf. Helvering v.*

---

[3]RCW 74.08.331 provides as follows:

"Any person who by means of a wilfully false statement, or representation, or impersonation, or a wilful failure to reveal any material fact, condition or circumstance affecting eligibility of need for assistance, including medical care, surplus commodities and food stamps, as required by law, or a wilful failure to promptly notify the county office in writing as required by law [of] any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstances affecting his eligibility or need for assistance, or other fraudulent device, obtains, or attempts to obtain, or aids or abets any person to obtain any public assistance to which he is not entitled or greater public assistance than that to which he is justly entitled shall be guilty of grand larceny and upon conviction thereof shall be punished by imprisonment in the state penitentiary for not more than fifteen years.

"Any person who by means of a wilfully false statement or representation or by impersonation or other fraudulent device aids or abets in buying, selling, or in any other way disposing of the real property of a recipient of public assistance without the consent of the director shall be guilty of a gross misdemeanor and upon conviction thereof shall be punished by imprisonment for not more than one year in the county jail or a fine of not to exceed one thousand dollars or by both."

*Mitchell, supra* at 401-05. In addition, the sanction contained in RCW 74.04.300 is not so unreasonable or excessive that it transforms what was intended as a civil remedy into a criminal penalty. *See One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 237, 34 L. Ed. 2d 438, 93 S. Ct. 489 (1972). Since the proceedings instituted by respondent, pursuant to RCW 74.04.300, are civil and not criminal in nature, they are not barred by the doctrine of double jeopardy.

In summary, neither collateral estoppel nor double jeopardy bars the respondent from assessing a fraudulent overpayment in this case even though appellant was previously acquitted on the charge of grand larceny based on the same factual circumstances. Therefore, the order of the Superior Court is affirmed.

STAFFORD, C.J., and HAMILTON, WRIGHT, and BRACHTENBACH, JJ., concur.

ROSELLINI, J. (dissenting)—In my opinion the action of the department was barred by the doctrine of collateral estoppel. The majority opinion concedes that, if there is no difference in the burden of proof in the criminal action in which the appellant was acquitted and this attempt to assess a fraudulent overpayment penalty against her, the doctrine would operate to bar the assessment. The majority, however, concludes that there is indeed a difference between proof beyond a reasonable doubt and proof by evidence which is clear, cogent, and convincing, the latter being the standard for proof of fraud. Its apparent conclusion is that the criminal burden is more onerous. The conclusion is unsupported by any rationale, however, just as was the statement cited as authority.

That statement, which was dictum, occurs in *Bland v. Mentor*, 63 Wn.2d 150, 385 P.2d 727 (1963), and reads, at page 154: "We do not deem the term connotes proof beyond a reasonable doubt." It is in direct conflict with a quotation from 37 C.J.S. *Fraud* § 94, at 398 (1943), which was approved in *Dobbin v. Pacific Coast Coal Co.*, 25 Wn.2d 190,

202, 170 P.2d 642 (1946), a case which went unnoticed by the court in *Bland v. Mentor, supra,* and by the majority in this case. That statement is as follows:

"The rules which impose the burden of proof on one alleging fraud and which deny a presumption of fraud rest on the fact that fraud is regarded as criminal in its essence, and involves moral turpitude at least, while, on the other hand, the presumption is that all men are honest, that individuals deal fairly and honestly, that private transactions are fair and regular, and that participants act in honesty and good faith. The presumption is against the existence of fraud and in favor of innocence, *the presumption against fraud approximating in strength the presumption of innocence of crime.*"

While there were in the intervening years statements made about the clear, cogent, and convincing test which would render it less exacting than the reasonable doubt test, although more stringent than the preponderance of the evidence test, this vague and amorphous middle ground of proof was eliminated in *In re Levias,* 83 Wn.2d 253, 517 P.2d 588 (1973). The holding of that case—that proof by clear, cogent, and convincing evidence is the civil equivalent of proof beyond a reasonable doubt—was approved and followed in *Alter v. Morris,* 85 Wn.2d 414, 536 P.2d 630 (1975).

The opinion in *In re Levias, supra* at 256 n.1, indicates that the holding regarding the nature of clear, cogent, and convincing evidence, is not in conflict with that of *Bland v. Mentor, supra,* because that case "was concerned only with a conveyance of real property and . . . a constructive trust" and involved no social stigma and loss of reputation.[4] I can only construe this to mean that, where the complaint contains no allegation reflecting upon the character of the

---

[4]The majority now says that the distinction noted in *Bland v. Mentor,* 63 Wn.2d 150, 385 P.2d 727 (1963), is not the significant one at all. Reflections upon character do not require convincing proof, nor is it required where monetary penalties are threatened. It is only necessary where loss of liberty is involved. This makes the commitment of persons in need of hospitalization for mental or emotional treatment very difficult and the imposition of treble damages relatively easy.

defendant, proof by clear, cogent, and convincing evidence is not required.

Here the appellant is accused of fraudulent conduct, decidedly a reflection upon her character. The burden of proof should be that which was approved by the court in *In re Levias, supra,* and *Alter v. Morris, supra.*

To tell the trier of fact that the burden of proof by clear, cogent, and convincing evidence is something more than "more probable than not" but less than "without any reasonable doubt" is to invite it into the land of speculation upon an abstract concept. Such advice violates the fundamental principle that words are to be given their usual and ordinary meaning except in extraordinary cases—as where the legislature has assigned them a different meaning.

The majority here ventures even further into vagary. It says that the law's definition of "clear, cogent, and convincing" is a nebulous thing, changing from case to case, depending upon the penalty or liability which the defendant may face.

The ordinary meaning of these words, however, is not nebulous. As words go, they are exceptionally rigid and precise.

"Clear"—as it relates to perceivable facts—means "easy to perceive or determine with certainty." "Cogent" means "appealing forcibly to the mind or reason: convincing." "Convincing" means "satisfying or assuring by argument or proof." *Webster's Third New International Dictionary* (1968).

Black's Law Dictionary 317 (4th ed. rev. 1968), says of "clear and convincing proof":

> Generally, this phrase and its numerous variations mean proof beyond a reasonable, *i.e.,* a well-founded doubt. . . . Some cases give a less rigorous, but somewhat uncertain, meaning, *viz.,* more than a preponderance but less than is required in a criminal case.

The word "cogent" is not defined in the law dictionary, but "convincing proof" is defined as

[s]uch as is sufficient to establish the proposition in question, beyond hesitation, ambiguity, or reasonable doubt, in an unprejudiced mind.

Black's Law Dictionary 404 (4th ed. rev. 1968).

I am inclined to agree with the Supreme Court of Wisconsin which said, in the case of *Evans v. Rugee*, 57 Wis. 623, 626, 16 N.W. 49 (1883):

To *convince* is primarily "to overcome or subdue," and, in logic, "to satisfy the mind by proof." When one is convinced he cannot be more convinced. If evidence is convincing, it is sufficient in any case, and to say it ought to be more convincing in one case than another, is giving to the word degrees of comparison when the word itself is superlative.

The difference between the burden of proof in the ordinary civil case, in the criminal case, and in the fraud case or other case in which a statute or the common law imposes the larger burden is that in the one the plaintiff's evidence must be sufficient to persuade the jury that it is more probable than not that the plaintiff's facts are true, while in the other it must be sufficient to convince the jury that they are true. To ask the trier of the facts to apply a standard somewhere between these two asks the philosophically untrained layman to conceptualize a proposition which is both qualitatively and quantitatively beyond the range of ordinary human understanding.

In my opinion the State's burden of proof before the jury which exonerated the appellant was no greater than the standard which the respondent (an agency of the State) is obliged to follow in evaluating the evidence against the appellant for the purpose of imposing the civil penalty provided in RCW 74.04.300. Since there is an identity of parties, subject matter, issues, and burden of proof, the doctrine of collateral estoppel should apply to grant the appellant the relief which she seeks. *See Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 429 P.2d 207 (1967).

But even assuming that the burden of proof in this case is different from that in the criminal action brought against the appellant, it is now established that the principle of res

judicata bars a punitive forfeiture of property following an acquittal of charges arising from the same conduct. *Coffey v. United States*, 116 U.S. 436, 29 L. Ed. 684, 6 S. Ct. 437 (1886); *United States v. One 1967 Cadillac El Dorado*, 453 F.2d 396 (9th Cir. 1971).

In *Boyd v. United States*, 116 U.S. 616, 29 L. Ed. 746, 6 S. Ct. 524 (1886), the United States Supreme Court held that civil proceedings which penalize a person by reason of offenses committed by him, are criminal in nature. Here the appellant was required to forfeit payments received by her and to pay an additional penalty to the State. The amount of the penalty may not appear great to this court, but to an indigent it may indeed be a "grievous loss"—*see Standlee v. Rhay*, 403 F. Supp. 1247 (E.D. Wash. 1975). There is no showing that the 25 percent penalty merely covered the cost of recoupment. I would hold that this penalty provision, attached to the same conduct for which the appellant was tried and found innocent, renders the proceeding criminal in nature.

The appellant should not be twice put in jeopardy by the State for this alleged offense.

I would reverse the Superior Court's order.

UTTER and HOROWITZ, JJ., concur with ROSELLINI, J.

Petition for rehearing denied August 2, 1976.