945 P.2d 700 (1997)
133 Wash.2d 355
STATE of Washington, Petitioner,
v.
Mary Catherine CATLETT, aka Mary C. Plata, Respondent.
No. 64266-4.
Supreme Court of Washington.
Argued February 26, 1997.
Decided October 16, 1997.
Jim Sweetser, Spokane County Prosecutor, Larry D. Steinmetz, Deputy Spokane County Prosecutor, Spokane, for Petitioner.
Brian C. O'Brien, Charles S. Dorn, Spokane, for Respondent.
Christine Gregoire, Attorney General, Frederick J. Caruso, Assistant Attorney General, Olympia, Amicus Curiae for the Attorney General.
TALMADGE, Justice.
We are asked yet again to enter the "maelstrom of judicial activity," to determine if the civil forfeiture of a person's automobile used to facilitate a drug transaction bars a subsequent criminal prosecution for the drug transaction on state and federal constitutional double jeopardy grounds. After United States v. Ursery, ___ U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), the Fifth Amendment to the United States Constitution does not bar such prosecution. We hold art. I, § 9 of the Washington Constitution does not bar such prosecution as well. We reverse the decision of the Court of Appeals and remand for further proceedings.

ISSUE
Does civil forfeiture of property pursuant to RCW 69.50.505 bar a subsequent criminal *701 charge of delivery of a controlled substance under the double jeopardy provisions of either the federal or state constitutions?

FACTS
On October 25, 1993, members of the Spokane Police Department purchased "crack" cocaine from Mary Catlett (aka Mary C. Plata) through the use of a confidential informant. While under surveillance, the informant entered a residence in Spokane. Officers observed a white female (later identified as Catlett) arrive at the residence driving a blue 1982 Plymouth with Washington plates. Catlett entered the residence where the police informant purchased crack cocaine from her. Catlett then left the residence and drove away in the car. A registration check showed the vehicle's owner to be Mary C. Plata.
On November 19, 1993, officers obtained and executed a search warrant for another Spokane residence where drug transactions occurred. Catlett was present during the search and the police seized the 1982 Plymouth and other evidence.
On January 24, 1994, pursuant to RCW 69.50.505, the Spokane Police Department conducted a civil forfeiture hearing regarding Catlett's car. The hearing officer ordered the car forfeited to the City of Spokane, finding Catlett was involved in drug sales and her car was used to facilitate such activities.
Catlett was subsequently charged in the Spokane County Superior Court on June 27, 1994 with delivery of a controlled substance in violation of RCW 69.50.401(a).[1] The trial court dismissed the charge stating:
The forfeiture of Mary Plata's vehicle pursuant to civil proceedings under RCW 69.50.505 is a punishment for purposes of federal and state double jeopardy analysis. Austin v. United States, 509 U.S. [602], 125 L.Ed.2d 488, 113 S.Ct. 2801 (1993); United States v. McCaslin, 863 F.Supp. 1299 (W.D.Wash.1994); State v. Clark, 124 Wash.2d 90, 101, 875 P.2d 613 (1994).
See App. A to Br. of Resp't to Court of Appeals, Findings of Fact and Conclusions of Law Re: Mot. to Dismiss For Violation of Double Jeopardy at 7-8.
On appeal, Division Three of the Court of Appeals affirmed the superior court's dismissal of the drug offense because a civil forfeiture of Catlett's car and a criminal prosecution for the controlled substance arising out of the same conduct constituted "punishment" for the "same offense," thus violating double jeopardy. State v. Catlett, 81 Wash.App. 791, 795-96, 916 P.2d 975 (1996). The court applied State v. Clark, 124 Wash.2d 90, 875 P.2d 613 (1994), which was, in turn, based on federal cases like Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), indicating civil forfeiture was "punishment" for purposes of the Fifth Amendment double jeopardy provision.
We granted the State's petition for review and asked the parties to respond to the following directive: "Within the time permitted by RAP 13.7(b), the parties shall submit additional briefs addressing the question whether, in light of United States v. Ursery, U.S. [sic] 116 S.Ct. 2135, 135 Led 2d [sic] 549 (1996), Wash. Const. Art. [sic] I, § 9 should be interpreted as more protective than the Double Jeopardy Clause of the Fifth Amendment."

ANALYSIS
A. The Prior Civil Forfeiture of Catlett's Car Was Not Punishment for Purposes of the Fifth Amendment
In our divided opinion in State v. Cole, 128 Wash.2d 262, 273, 906 P.2d 925 (1995), we recognized the above-mentioned "maelstrom of judicial activity" in the area of civil forfeiture and Fifth Amendment double jeopardy analysis. In three recent United States Supreme Court casesaddressing in personam civil penalties under the Double Jeopardy Clause, civil forfeiture under the Excessive *702 Fines Clause, and tax proceedings under the Double Jeopardy Clausethe Court appeared to provide an avenue by which a civil forfeiture could be viewed as punishment so that a subsequent criminal prosecution for drug offenses would violate Fifth Amendment double jeopardy principles. See United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); and Department of Revenue of Mont. v. Kurth Ranch, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). Various courts and commentators extrapolated from these cases that civil forfeiture amounts to punishment for Fifth Amendment double jeopardy purposes.[2]
In Ursery, decided after the Court of Appeals' decision in Catlett, the Supreme Court clearly held civil forfeitures are neither "punishment" nor criminal for double jeopardy purposes. Id. at ___, 116 S.Ct. at 2149. The Ursery court also clarified that the long-standing rule that civil forfeiture is remedial, enunciated in Various Items of Personal Property v. United States, 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931); One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); and United States v. One Assortment of 89 Firearms, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), was not abandoned or altered by its more recent decisions in Halper, Austin, or Kurth Ranch.
[N]othing in Halper, Kurth Ranch, or Austin, purported to replace our traditional understanding that civil forfeiture does not constitute punishment for the purpose of the Double Jeopardy Clause.... [T]his Court consistently has found civil forfeitures not to constitute punishment under the Double Jeopardy Clause. It would have been quite remarkable for this Court both to have held unconstitutional a well-established practice, and to have overruled a long line of precedent, without having even suggested that it was doing so. Halper dealt with in personam civil penalties under the Double Jeopardy Clause; Kurth Ranch with a tax proceeding under the Double Jeopardy Clause; and Austin with civil forfeitures under the Excessive Fines Clause. None of those cases dealt with... in rem civil forfeitures for purposes of the Double Jeopardy Clause.
Ursery, ___ U.S. at ____, 116 S.Ct. at 2147. The Ursery Court stated federal courts misread Halper, Austin and Kurth Ranch when they departed from the well-established rule that "civil forfeiture [does] not constitute `punishment' for double jeopardy purposes." Ursery, ___ U.S. at ____ _ ____, 116 S.Ct. at 2142-44. "None of those decisions purported to overrule the well-established teaching of Various Items, Emerald Cut Stones, and 89 Firearms." Id. at ____, 116 S.Ct. at 2144. Ursery settles the issue of whether a civil forfeiture is "punishment" for purposes of federal double jeopardy. It is not. Ursery is dispositive of the federal double jeopardy issue.
Catlett attempts to distinguish Ursery as a proceeds case, but it is not. In Ursery, the Supreme Court consolidated cases which dealt with civil forfeiture of both property as proceeds and property used to facilitate illegal drug processing and distribution, and held broadly "[t]hese civil forfeitures (and civil forfeitures generally), we hold, do not constitute `punishment' for purposes of the Double Jeopardy Clause." Ursery, ___ U.S. at ____ _ ____, 116 S.Ct. at 2138-39.
The Court of Appeals here relied upon our decision in Clark, which was, in turn, based on Austin, to find civil forfeiture amounted to "punishment" for purposes of Fifth Amendment double jeopardy analysis. Clark *703 has been superseded by Ursery.[3]Clark is overruled as it relied exclusively on an analysis of the Fifth Amendment now rejected by Ursery. See Clark, 124 Wash.2d at 95-100, 875 P.2d 613.
Our decision on the Fifth Amendment, however, does not end our analysis because we have asked whether Catlett may claim further double jeopardy protection under the Washington Constitution.
B. Catlett's Prior Civil Forfeiture Was Not Punishment for Purposes of WASH. CONST. art. I, § 9
In analyzing Washington's constitutional double jeopardy provision, WASH. CONST. art. I, § 9, both parties in this case have addressed the question of whether the Fifth Amendment and art. I, § 9 are "coextensive." The State argues that they are coextensive, relying on the recent decision in State v. Gocken, 127 Wash.2d 95, 102, 896 P.2d 1267 (1995): "Washington courts have consistently held the double jeopardy clause of the Fifth Amendment and the double jeopardy clause in Const. art. I, § 9 are virtually identical." See also State v. Hennings, 129 Wash.2d 512, 527, 919 P.2d 580 (1996); State v. Hardesty, 129 Wash.2d 303, 309 n. 2, 915 P.2d 1080 (1996); State v. Cole, 128 Wash.2d 262, 274 n. 7, 906 P.2d 925 (1995); State v. Pascal, 108 Wash.2d 125, 131 n. 1, 736 P.2d 1065 (1987); State v. Ridgley, 70 Wash.2d 555, 556, 424 P.2d 632 (1967); State v. Schoel, 54 Wash.2d 388, 391, 341 P.2d 481 (1959).
Catlett argues for a protective double jeopardy standard under article I, section 9, citing the view that state constitutional provisions are intended to be more protective of individual liberties. Catlett further urges that this Court not "blindly follow" the federal precedent (i.e.Ursery) discussed above. Supplemental Br. of Resp't at 16.
The more salient question, however, is how we define "punishment" for purposes of art. I, § 9 of our constitution. The double jeopardy clauses of the Fifth Amendment and CONST. art. I, § 9 protect a defendant against multiple punishments for the same offense. Hennings, 129 Wash.2d at 528, 919 P.2d 580; State v. Calle, 125 Wash.2d 769, 772, 888 P.2d 155 (1995); State v. Noltie, 116 Wash.2d 831, 848, 809 P.2d 190 (1991); State v. Vladovic, 99 Wash.2d 413, 423, 662 P.2d 853 (1983).
In Cole, we held that double jeopardy did not attach where forfeiture of "proceeds" occurred prior to criminal convictions because forfeiture of the proceeds of an illegal drug transaction is not punitive. See Cole, 128 Wash.2d at 279, 906 P.2d 925. The defendants in Cole claimed the forfeitures of their property followed by their criminal convictions amount to multiple punishments for the same offense, and that their criminal convictions, having been imposed after jeopardy had attached with the civil forfeitures, are prohibited by the double jeopardy clause. Likewise, Catlett asserts the double jeopardy clause bars a related criminal proceeding following civil forfeiture of her car. Yet, in Cole, we noted the threshold inquiry as follows, "[i]n analyzing these claims, we must decide if the civil forfeitures that occurred amounted to constitutional punishments. If they were not punishments, the subsequent convictions ... do not implicate double jeopardy concerns." Cole, 128 Wash.2d at 274, 906 P.2d 925.[4]See also State v. Frodert, 84 Wash.App. 20, 25-26 and n. 3, 924 P.2d 933 (1996) (where the court concluded the threshold requirement of multiple punishments was lacking, other prongs of double jeopardy analysis (i.e., "same offense") were not addressed). Thus, the significant initial question we must address is whether civil forfeiture *704 is punishment for purposes of art. I, § 9 of our constitution.
Catlett asserts prior case law conclusively establishes RCW 69.50.505 is punitive, citing Deeter v. Smith, 106 Wash.2d 376, 721 P.2d 519 (1986), because forfeiture proceedings are quasi-criminal in nature and punitive in effect. Supplemental Br. of Resp't at 4; Answer to Pet. for Review at 5. Catlett's reliance on Deeter is misplaced. In Deeter, this Court stated that for purposes of the Fourth Amendment exclusionary rule, civil forfeitures are quasi-criminal in nature and the exclusionary rule applies. Deeter did not address double jeopardy issues.[5]
Citing Clark, Catlett also contends that civil forfeiture has at least a partially punitive purpose, a deterrent purpose, and therefore the statute is punitive for double jeopardy purposes under article I, section 9; Clark purportedly adopted the "solely remedial" test of Halper. "RCW 69.50.505(a)(8) and (4) thus cannot be said solely to serve a remedial purpose, and forfeiture under these provisions constitutes `punishment.'" Clark, 124 Wash.2d at 99, 875 P.2d 613.
The analysis in Clark of what is "punishment" for double jeopardy purposes is infected by the confusion over double jeopardy and civil forfeiture engendered by the pre-Ursery federal cases. Indeed, Ursery rejected the analysis set forth in Clark. The fact that the basis for the civil forfeiture may be criminal activity does not render the forfeiture proceeding either criminal or a resulting forfeiture punishment for double jeopardy purposes. The Ursery court held that such linkage was insufficient to render the statute punitive, noting "Congress may impose both a criminal and a civil sanction in respect to the same act or omission." Id. at ____, 116 S.Ct. at 2149. In Ursery, the Supreme Court applied the two-part inquiry contained in 89 Firearms[6]: (1) Did Congress intend the forfeiture statute to be criminal or civil? (2) Are the proceedings so punitive as to persuade the Court that the forfeiture proceedings may not be viewed as *705 civil in nature despite congressional intent? See Ursery, ___ U.S. at ____, 116 S.Ct. at 2147.
Historically, we too have adopted an analogous two-part test for defining "punishment" for double jeopardy purposes. See Beckett v. Department of Social and Health Servs., 87 Wash.2d 184, 188-90, 550 P.2d 529 (1976), overruled on other grounds, Matter of McLaughlin, 100 Wash.2d 832, 676 P.2d 444 (1984); O'Day v. King County, 109 Wash.2d 796, 817-18, 749 P.2d 142 (1988); In the Matter of the Personal Restraint of Young, 122 Wash.2d 1, 18-19, 857 P.2d 989 (1993). We have articulated the test as follows:
The categorization of a particular statute as civil or criminal is largely a matter of statutory construction. Allen v. Illinois, 478 U.S. 364, 368, 106 S.Ct. 2988 [2991], 92 L.Ed.2d 296 (1986); United States v. Ward, 448 U.S. 242, 248, 100 S.Ct. 2636 [2641], 65 L.Ed.2d 742 (1980). The Supreme Court has adopted a 2-part analysis:
First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.
(Citations omitted.) Ward, 448 U.S. at 248-49 [100 S.Ct. at 2641-42]. Thus, we look first to the language of the Statute [sic] and the legislative history, then turn to an analysis of the purpose and effect of the statutory scheme.
Young, 122 Wash.2d at 18-19, 857 P.2d 989. The Clark court neglected to analyze RCW 69.50.505 explicitly in terms of the test in 89 Firearms or Young.
We recently engaged in a more comprehensive analysis of Halper, in State v. McClendon, 131 Wash.2d 853, 935 P.2d 1334 (1997), holding that the issuance of probationary drivers licenses is not punishment for double jeopardy purposes. Therein, this Court noted "[p]robationary licenses may carry with them the `sting' of punishment, but that does not necessarily characterize them as `punishment' for double jeopardy purposes." 135 Wash.2d at 868, 935 P.2d 1334. Citing Halper, we stated "[t]he issuance of probationary licenses is punishment only if it can be characterized as serving solely retributive or deterrent purposes. If their issuance may fairly be characterized as remedial and bears a rational relation to the government's remedial purpose, then it is not punishment for double jeopardy purposes." Id. at 867, 935 P.2d 1334.
For purposes of determining whether a statute is remedial or punitive under art. I, § 9 of our constitution, we expressly adopt the two-part test of 89 Firearms and Young. Insofar as the Clark court did not analyze RCW 69.50.505 in terms of that test, we do so now.
Regarding the first inquiry, the Ursery court noted in rem proceedings targeting the property rather than the owner have traditionally been civil proceedings utilizing distinctly civil procedural mechanisms, indicating Congress's intent that the proceedings be civil in nature. Ursery, ___ U.S. at ____ _ ___, 116 S.Ct. at 2147-48. Similarly, the plain language of RCW 69.50.505 and its legislative history attest to its civil nature. The statute frequently references superior court civil rules. RCW 69.50.505(c), (e), and (m). The Legislature also specifically noted the civil forfeiture statute is a civil process. See Final Legislative Report, 2SHB 1793 (1989) at 119 ("Seizure and forfeiture are civil processes and are independent of the outcome of any criminal charges that might be brought against the owner of the property.").
With respect to the second inquiry, the United States Supreme Court required the "clearest proof" that the forfeiture proceedings are so punitive in form and effect as to render them criminal despite Congress's intent to the contrary, Id. at ____, 116 S.Ct. at 2148, and held this burden was not met where a forfeiture statute "while perhaps having certain punitive aspects, serve[s] important nonpunitive goals[,]" such as encouraging property owners to take care in managing their property and ensuring they will not permit that property to be used for illegal *706 purposes. Id. at ____, 116 S.Ct. at 2148.[7] In Young, we applied similar reasoning, noting:
[T]he determinative factors for resolving a double jeopardy claim are whether [the sanction] has a rational connection to some purpose other than retribution or deterrence, and whether the sanction appears excessive in relation to the alternative purpose.

O'Day v. King Cy., 109 Wash.2d 796, 817, 749 P.2d 142 (1988) (citing Mendoza-Martinez, 372 U.S. at 168-69 [83 S.Ct. at 567-68]). Absent any indication that a criminal purpose was intended, or actually served by the statute, the stated civil goals of the Legislature are controlling. See Mendoza-Martinez, 372 U.S. at 168-69 [83 S.Ct. at 567-68].
Young, 122 Wash.2d at 23, 857 P.2d 989. Thus, if RCW 69.50.505 has a rational connection to some nonretributive purpose, the Legislature's designation of the statute as civil (or remedial) must stand.
The Ursery court noted many considerations support its conclusion that civil forfeiture is not punitive: the long history of in rem forfeiture as civil proceedings; the lack of scienter needed under the statute in question as property may be forfeited without showing a connection to a particular person; and the "deterrent" purpose of the statute serving civil as well as criminal goals. See Ursery, ___ U.S. at. ____, 116 S.Ct. at 2149. Likewise, RCW 69.50.505 also serves nonpunitive goals. The statute is designed to reimburse government for its prosecutorial costs.[8] This purpose is confirmed by the distributive scheme for funds obtained by forfeiture. See, e.g., RCW 69.50.505(f)(i). Moreover, the statute is also intended to remove property involved in drug activities. Property may be forfeited under the statute without showing a connection to a particular person. RCW 69.50.505(a)(4) requires only that the property was "used or intended for use ... to facilitate" a violation.
Catlett has provided no viable reason why we should declare erroneous the legislative determination that RCW 69.50.505 is remedial. Nor has she provided the "clearest proof" required under the two-part test to overcome the presumption that in rem forfeiture proceedings designated as "civil" by the Legislature are not subject to double jeopardy. See Ursery, ___ U.S. at ____ n. 3, 116 S. Ct at 2148 n. 3. Like the federal statute examined in Ursery, RCW 69.50.505 is not so punitive as to constitute criminal punishment for purposes of double jeopardy analysis.[9]

CONCLUSION
Catlett's case has been overtaken by events. The case law that won the day for *707 Catlett below has been superseded by more recent federal precedent. Under Ursery, the Fifth Amendment does not bar a subsequent criminal prosecution for a drug offense where property used to facilitate that drug offense has been forfeited via a prior civil forfeiture proceeding. Under WASH. CONST. art. I, § 9, we hold that proceedings under RCW 69.50.505 are not punishment to which jeopardy attaches. The Court of Appeals should be reversed and the case remanded to the trial court for further proceedings.
DURHAM, C.J., and DOLLIVER, SMITH and GUY, JJ., concur.
SANDERS, Justice, dissenting.
Has "Catlett's case ... been overtaken by events" (Majority at 706) or has the constitution been overtaken by the majority?
I find the latter more probable since article I, section 9 of the Washington Constitution is the same today, word for word, as on the date of its popular ratificationOctober 1, 1889and the Fifth Amendment is identical to the text proposed by Congress and ratified by three-fourths of the states in 1791. Members of the court may change, but the organic constitutional documents and the principles they embody do not.
The question then is whether either constitution bars a subsequent criminal prosecution arising from the same facts which previously prompted the state to seize and forfeit a criminal defendant's property.[1] The trial court and the Court of Appeals concluded the double jeopardy clause of both the federal and state constitutions bars such a criminal prosecution. I agree.

I. Double Jeopardy Clause of the United States Constitution
[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb....
U.S. Const. amend. V. The United States Supreme Court did not apply the Fifth Amendment to the states until 1969.[2] However now it is generally recognized the Fifth Amendment's double jeopardy protections add a second layer of protection to the rights enjoyed by the citizens of several states beyond that required by their state constitutions. See State v. Smith, 117 Wash.2d 263, 283, 814 P.2d 652 (1991) (Utter, J., concurring); Robert F. Utter, Freedom and Diversity in a Federal System: Perspectives on State Constitutions and the Washington Declaration of Rights, 7 U. Puget Sound L.Rev. 491 (1984) (hereinafter "Utter").
The clause prohibits "`successive punishments' "for the same crime. United States v. Ursery, ___ U.S. ____, ____, 116 S.Ct. 2135, 2139, 135 L.Ed.2d 549 (1996) (quoting United States v. Dixon, 509 U.S. 688, 694, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556 (1993)). The issue is simply whether forfeiture under RCW 69.50.505 is punishment. See State v. McClendon, 131 Wash.2d 853, 870, 935 P.2d 1334, 1344 (1997) (Talmadge, J., concurring) ("The present case rises and falls on a single question: is the license action punishment? If it is punishment, jeopardy attaches."), petition for cert. filed 66 U.S.L.W. 3129 (U.S. Jul. 24, 1997) (No. 97-166).
Whether a state sanction is punishment is a question of statutory interpretation. Kansas v. Hendricks, ___ U.S. ____, ____, 117 S.Ct. 2072, 2081, 138 L.Ed.2d 501 (1997) (whether sanction is punishment for double jeopardy "`is first of all a question of statutory construction'") (quoting Allen v. Illinois, 478 U.S. 364, 368, 106 S.Ct. 2988, 2991, 92 L.Ed.2d 296 (1986)); In re Young, 122 Wash.2d 1, 18, 857 P.2d 989 (1993) (whether statute punishes for double jeopardy "is largely a matter of statutory construction."); Beckett v. Department of Soc. & Health Servs., 87 Wash.2d 184, 188, 550 P.2d 529 (1976), overruled on other grounds by Dunner *708 v. McLaughlin, 100 Wash.2d 832, 843, 676 P.2d 444 (1984). The statutory issue focuses on a variety of factors including the nature of statutory sanction, the statute's place in the overall regulatory scheme, the legislative intent and whether the statute's sanction has historically been viewed as punishment. In re Young, 122 Wash.2d 1, 857 P.2d 989 (1993).
As candidly acknowledged by the majority, this court has historically held the Fifth Amendment double jeopardy clause bars, absolutely, any subsequent criminal prosecution which arises under the same facts as a previous forfeiture of property under the statute here at issue.[3] But we must measure this precedent with deference to the majority's claim that Ursery, ___ U.S. ____, 116 S.Ct. 2135, 135 L.Ed.2d 549, trumps prior state precedent for the purpose of the federal constitutional analysis.
That Ursery controls is clearly correct; however, that Ursery strips Catlett of her Fifth Amendment protection is clearly not.
The majority characterizes Ursery as positing a two-prong test in such situations:
(1) Did Congress intend the forfeiture statute to be criminal or civil? [And, if civil,]
(2) Are the proceedings so punitive as to persuade the Court that the forfeiture proceeding may not be viewed as civil in nature despite congressional intent?
Majority at 704-05. The second prong of the test is employed only if we first determine if the legislative intent is "civil"; for if it is "criminal" the analysis proceeds no further because jeopardy is established.

A. Criminal Legislative Intent
RCW 69.50.505 provides:
(a) The following are subject to seizure and forfeiture and no property right exists in them:
....
(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or intended for use, in any manner to facilitate the sale, delivery, or receipt of [illegal drugs]....
Of course this statute is a state statute, not a federal one. Therefore we must independently determine legislative, not congressional, intent. State sovereignty requires no less. Cf. Boeing Aircraft Co. v. Reconstruction Fin. Corp., 25 Wash.2d 652, 657, 171 P.2d 838, 168 A.L.R. 539 (1946) ("The American system of government is dual in nature, containing Federal and state sovereignties, each supreme within its appropriate sphere....").
Ursery construed two federal statutes, 21 U.S.C. § 881 and 18 U.S.C. § 981, concluding that the congressional intent was to create a civil remedy.[4]Ursery, ___ U.S. at *709 ____, 116 S.Ct. at 2147. However, we have repeatedly held the United States "Supreme Court's construction of a similarly worded[[5]] federal statute, although often persuasive, `is not controlling in our interpretation of a state statute.'" Hoffer v. State, 113 Wash.2d 148, 151, 776 P.2d 963 (1989) (declining to apply federal interpretation of a federal securities law to similar Washington securities law) (quoting State v. Gore, 101 Wash.2d 481, 486-87, 681 P.2d 227, 39 A.L.R.4th 975 (1984) (citing Weeks v. Chief of the Washington State Patrol, 96 Wash.2d 893, 897, 639 P.2d 732 (1982))); Kahler v. Kernes, 42 Wash.App. 303, 308, 711 P.2d 1043 (1985) ("Interpretations of 21 U.S.C. § 881(a)(4) [the federal forfeiture statute] do not help in interpreting RCW 69.50.505(a)(4)."); compare State v. Clark, 124 Wash.2d 90, 98, 875 P.2d 613 (1994) (dicta suggest similar federal and state statutes have similar implications for the purposes of federal double jeopardy, concluding both implicate jeopardy).
Application of Ursery's first prong is simple. We have previously held RCW 69.50.505 imposes a quasi-criminal punishment. Deeter v. Smith, 106 Wash.2d 376, 378, 721 P.2d 519 (1986) and Clark, 124 Wash.2d at 97-101, 875 P.2d 613. Deeter`s question was whether forfeiture of defendant's car under RCW 69.50.505 was punishment for Fourth Amendment purposes. By unanimous opinion we answered RCW 69.50.505 "is intended to impose a penalty on an individual for a violation of the criminal law," Deeter, 106 Wash.2d at 378, 721 P.2d 519, and hence was "quasi criminal." "In this regard the Fourth and Fifth Amendments run almost into each other." Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886). Punishment for the purpose of one must be punishment for the other.
Clark, 124 Wash.2d 90, 875 P.2d 613, expressly held our state Legislature intended this particular statute to be punitive and unanimously concluded forfeiture under this statute is "punishment." Clark, 124 Wash.2d at 101, 875 P.2d 613 ("We therefore conclude the forfeitures at issue here are `punishment' for purposes of federal double jeopardy analysis.").
The common denominator of the three separate opinions in State v. Cole, 128 Wash.2d 262, 906 P.2d 925 (1995) was to the extent property was forfeited under RCW 69.50.505, and was not proceeds of a connected crime, the forfeiture was punishment for jeopardy purposes. Justice Talmadge, joined by Justices Smith and Dolliver, wrote "civil forfeiture [under RCW 69.50.505] of property other than proceeds is a punishment...." Cole, 128 Wash.2d at 285 n. 18, 906 P.2d 925. Justice Alexander, joined by Chief Justice Durham and Justice Madsen, concurred to the extent property forfeited "was not proceeds of drug trafficking ... a conviction on criminal charges that follows a forfeiture action constitutes a second punishment for the same offense." Id. at 293, 906 P.2d 925. Justice Johnson, joined by Justices Guy and Utter, dissented, writing "a forfeiture under RCW 69.50.505(a)(7), the statute at issue here, must be considered punishment" for double jeopardy purposes. Cole, 128 Wash.2d at 297, 906 P.2d 925. Punishment by forfeiture was the point of common agreement.
Deeter and Clark were both unanimous decisions, both are still good law, and both held the statute in question is punishment, as did Cole. These cases control and are dispositive. Except for Clark (as per this majority opinion) they have not been overruled. As Catlett's car is not the proceeds of crime, seizing it because she sold crack cocaine *710 is criminal punishment under Washington law and jeopardy attaches.
Not only have our cases substantively analyzed the statute as punishment but they have facially labeled it "quasi criminal." City of Lynnwood v. $128 Cash, 61 Wash.App. 505, 513, 810 P.2d 1377 (1991) (forfeitures under RCW 69.50.505 are "quasi criminal since their purpose is to penalize individuals who are illegally involved with controlled substances"); Franklin v. Klundt, 50 Wash. App. 10, 12, 746 P.2d 1228 (1987) ("A forfeiture proceeding under RCW 69.50.505 is quasi criminal in nature...."); Deeter, 106 Wash.2d at 378, 721 P.2d 519 ("Clearly then, forfeiture proceedings brought pursuant to this statute are quasi criminal....").
I posit state authority which has determined the subject state forfeiture statute is punishment and "quasi criminal" is dispositive under the Ursery test.
If this were not enough, however, there are several other independent factors which favor this conclusion even beyond binding precedent. RCW 69.50.505 is part and parcel of the controlled substances act, and it is an overtly criminal statute which imposes harsh felony penalties for possession and/or distribution of illegal drugs. See, e.g., Article IVOffenses and Penalties, RCW 69.50.401.440. The fact that the forfeiture provisions are embedded in a criminal statute further suggests it is punitive and criminal. Compare Young, 122 Wash.2d at 19, 857 P.2d 989 (the fact the sexual psychopath statute is part of the civil commitment portion of RCW Title 71 on mental illness and not in criminal law suggests it is civil), and Kansas v. Hendricks, ___ U.S. at ____, 117 S.Ct. at 2082 (Kansas's sexually violent predator act is noncriminal because it is within the Kansas probate code).
Young directs consideration of "`whether the behavior to which [the sanction] applies is already a crime....'" 122 Wash.2d at 21, 857 P.2d 989 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 567-68, 9 L.Ed.2d 644 (1963)). Austin v. United States, 509 U.S. 602, 620, 113 S.Ct. 2801, 2811, 125 L.Ed.2d 488 (1993) similarly held the sanction is punishment if "tie[d] ... directly to the commission of drug offenses." Deeter holds the purpose of this statute "is to penalize individuals who participate in the illegal transportation of controlled substances." Deeter, 106 Wash.2d at 378, 721 P.2d 519. RCW 69.50.505(a)(4) provides forfeiture results when the owner sells, delivers, or receives criminally illegal drugs as defined elsewhere in the same chapter. Further, the statute contains innocent owner exceptions. See RCW 69.50.505(a)(7). Such are indications of a legislative intent to punish and are also inconsistent with in rem civil forfeiture. Clark, 124 Wash.2d at 100, 875 P.2d 613. Forfeiture of one's car or home is directly tied to the commission of a drug crime. When one loses life, liberty, or property as a result of a criminal act, such is punishment. Compare McClendon, 131 Wash.2d at 875 n. 59, 935 P.2d 1334 (Talmadge, J., concurring) (license probation not punishment because defendant is "not deprived of life, limb, liberty, or property."). Susan R. Klein, Civil In Rem Forfeiture and Double Jeopardy, 82 Iowa L.Rev. 183, 188 (1996) ("[F]orfeiture is punitive if the property owner is guilty of a criminal offense that would support the forfeiture, unless the forfeited property is illegal or dangerous for anyone to own."). Forfeiture under RCW 69.50.505 is criminal punishment.

B. Civil Proceedings Punitive in Substance
Were we to mistakenly conclude in disregard of controlling precedent the subject forfeiture provision was legislatively labeled "civil" (which it isn't), Ursery further directs our gaze behind that label to substance. As the majority says, we must ask, "Are the proceedings so punitive as to persuade the Court that the forfeiture proceedings may not be viewed as civil in nature despite congressional [legislative] intent?" Majority at 704-05.
First we must consider what purposes are really served by seizing someone's car for committing a drug violation. See United States v. Halper, 490 U.S. 435, 448, 109 S.Ct. 1892, 1901-02, 104 L.Ed.2d 487 (1989) ("[T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the *711 penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.").
RCW 69.50.505 serves goals of deterrence and retribution, classic hallmarks of criminal punishment, as it facially provides its forfeiture provisions "will provide a significant deterrent to crime." Laws of 1989, ch. 271, subpart C, § 211, at 1298. See Deeter, 106 Wash.2d at 378, 721 P.2d 519 (purpose of RCW 69.50.505(a)(4) "is to penalize individuals who participate in the illegal transportation of controlled substances"); Andrew L. Subin, The Double Jeopardy Implications of In Rem Forfeiture of Crime-Related Property: The Gradual Realization of a Constitutional Violation, 19 Seattle U.L.Rev. 253, 253 (1996) ("[T]he government has relied heavily on the forfeiture of property related to drug crimes as a tool to deter and punish the illegal distribution of drugs."). Deterrence and retribution are indicative of punishment. Young, 122 Wash.2d at 22, 857 P.2d 989 ("[R]etribution and deterrence are punitive, and thus are the goals of criminal law."); Bell v. Wolfish, 441 U.S. 520, 539 n. 20, 99 S.Ct. 1861, 1874 n. 20, 60 L.Ed.2d 447 (1979) ("Retribution and deterrence are not legitimate nonpunitive governmental objectives.").
The history of forfeitures in Washington also demonstrates forfeitures in our State have traditionally been for punishment. Young, 122 Wash.2d at 18, 857 P.2d 989; Ursery, ___ U.S. at ____, 116 S.Ct. at 2149.
Under English law forfeiture of one's property for committing a crime was always deemed an added punishment, usually reserved for egregious crimes because it reached to the well-being of the convict's family. See 3 William Blackstone, Commentaries on the Laws of England 267 (St. George Tucker ed., 1969) (1803) ("Forfeiture is a punishment" added for offenses such as high treason.). The Washington Territory statutorily incorporated English common law into territorial law in 1881 and upon statehood territorial law became law of the State. Code of 1881, § 1; Const. art. XXVII, § 2; RCW 4.04.010.
At the time of statehood, forfeitures were also considered punishment by the United States Supreme Court for double jeopardy purposes. For example, in 1886 on the eve of statehood the Supreme Court held forfeitures civil in form may be criminal in effect. Boyd v. United States, 116 U.S. 616, 633, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886) ("[P]roceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal" and thus give rise to these constitutional safeguards.). See also United States v. Chouteau, 102 U.S. 603, 611, 12 Otto 603, 26 L.Ed. 246 (1880) (forfeiture of bond precludes subsequent criminal action). But historically our State eschewed forfeiture of property for criminal acts. A Washington statute, enacted in 1909, provides, "A conviction of crime shall not work a forfeiture of any property, real or personal, or of any right or interest therein." RCW 9.92.110. Until the 1970s, forfeiture under Washington law was very limited,[6] whether characterized as civil or criminal.
In stark contrast to our state experience, Ursery relied on the unique and long federal experience with forfeitures in admiralty (seizing pirate ships) and customs (seizing illegal contraband). But our state forfeiture statute was borne of different intent. When our Legislature first enacted this forfeiture law it intended it to be criminal and punitive. State v. Clark, 124 Wash.2d 90, 99, 875 P.2d 613 (1994) ("The Legislature ... ha[s] declared the Washington civil [sic] forfeiture statute to be at least partially punitive.").
*712 The majority claims even if a statute predominately punishes, any remedial effect mandates the entire statute must fall outside the double jeopardy analysis. Although this proposition is questionable at best,[7] this statute is solely punitive.
To support its claim that there are remedial aspects, the majority asserts "[t]his purpose is confirmed by the distributive scheme for funds obtained by forfeiture. See, e.g., RCW 69.50.505(f)(i)."[8] Majority at 706. The majority's footnote 8 references Laws of 1989, chapter 271, section 211 at 1298 (Majority at 706 n. 8). But even the most superficial reading of this section demonstrates the entire governmental justification for property forfeiture, however the proceeds are distributed, is crime-related. The terms "offenses," "crimes," "illegal," "deterrent to crime," appear so frequently within the quoted material that one might assume this citation came from the dissent rather than the majority. Moreover, the reference to investment of "profits derived from the criminal activities, [to] be invested in legitimate assets and later used for further criminal activities" bespeaks of a forfeiture of criminal proceeds, of which Ms. Catlett's car clearly was not. Majority at 706 n. 8.
The majority also states "[t]he statute is designed to reimburse government for its prosecutorial costs." Majority at 706. This claim was rejected outright in Clark, 124 Wash.2d at 98, 875 P.2d 613[9] (citing Austin v. United States, 509 U.S. 602, 622 n. 14, 113 S.Ct. 2801, 2812 n. 14, 125 L.Ed.2d 488 (1993)) ("The value of the conveyances and real property forfeitable ... can vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental."). Actually the majority proves the applicability of the double jeopardy clause by forging yet another link between criminal conduct and criminal forfeiture.
Judged by the Ursery standard this forfeiture raises a double jeopardy bar to a subsequent criminal prosecution because (1) the statute is criminal or at least quasi criminal, not civil, and (2) even if we were to wrongly label the statute civil, the proceedings thereunder are nevertheless so punitive in effect the court must view them substantively criminal in any event.
Moreover, I would independently reach the same conclusion under article I, section 9 of the Washington Constitution, for the reasons set forth below.

II. Double Jeopardy Under Washington Constitution
Rights of Accused Persons. No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense.
Const. art. I, § 9.
Citing cases which generally hold the Washington double jeopardy clause means the same as its federal counterpart,[10] the majority posits if the United States Supreme Court radically changes what was previously thought to be the meaning of the Fifth Amendment, ipse dixit, the meaning of the state clause must change along with it (see supra note 3, at 708). Thus, as per the majority, the federal tail wags the state constitutional dog. I disagree.
Washington Constitution article I, section 32 mandates:
A frequent recurrence to fundamental principles is essential to the security of *713 individual right and the perpetuity of free government.
However, there is nothing fundamental about a standard of constitutional interpretation which varies the "fundamental principles" of our state constitution by each unanticipated United States Supreme Court decision, even those rendered a century or more after our state constitution was ratified by the people in 1889. To the contrary, the principles of our constitution were not only meant for their time but for all time, absent amendment to the organic document in the manner prescribed.
The constitution must be construed in the sense in which the framers understood it in 1889. In other words, its meaning was fixed at the time it was adopted.
The rule is well stated in 11 Am.Jur. 674, Constitutional Law, § 61, as follows:
"The fundamental principle of constitutional construction is to give effect to the intent of the framers of the organic law and of the people adopting it. A constitutional clause must be construed reasonably to carry out the intention of the framers, which gives rise to the corollary that it should not be construed so as to defeat the obvious intent if another construction equally in accordance with the words and sense may be adopted which will enforce and carry out the intent. The intent must be gathered from both the letter and spirit of the document.
"It has been very appropriately stated that the polestar in the construction of Constitutions is the intention of the makers and adopters."
Boeing Aircraft Co. v. Reconstruction Fin. Corp., 25 Wash.2d 652, 658-59, 171 P.2d 838, 168 A.L.R. 539 (1946).
A constitutional provision should receive a consistent and uniform interpretation. Even though the circumstances may have changed to make a different rule seem more desirable, the constitution should not be taken to mean one thing at one time and another at another time. State ex rel. Lemon v. Langlie, 45 Wash.2d 82, 273 P.2d 464 (1954).
Notwithstanding sound constitutional doctrine supported by ample specific authority that forfeiture under this statute invokes jeopardy,[11] the majority facially rejects the established rule that the meaning of our state constitution was fixed at the time it was adopted and must be construed in the sense in which the ratifiers understood it. Simply put, the majority supplants an independent analysis of the true meaning of our state constitution by the majority's characterization of Ursery, a recent case decided by the United States Supreme Court 107 years after the adoption of article I, section 9 (Majority at 704-07) and which, quite obviously, had absolutely no bearing whatsoever on the original understanding of the citizens of this State who popularly ratified our constitution in 1889.
The implication of this approach is catastrophic in theory and effect. In theory it contradicts the early constitutional history of the United States which leaves "no doubt that state bills of rights were never intended to be dependent on or interpreted in light of the United States Bill of Rights." Utter, supra, at 496. It abrogates the very essence of constitutional government because it denies the nature of our state constitution as a covenant between the people and their government whereby the people consent to be governed but only cede the power of governance in a limited fashion upon specific terms and conditions, punctuated by even further exceptions delineated in our State Declaration of Rights, of which the double jeopardy clause is an integral part. Const. art. I, § 9. In practice a transient majority of this court sets itself above the very constitutional covenant which created the court by purporting not to interpret our state constitution but *714 rather to supplant it with the shifting sands of federal jurisprudence.
Not only reason but precedent has rejected this errant approach. We refused to "reject... established jurisprudence and follow, blindly, the lead of the United States Supreme Court" in State v. Jackson, 102 Wash.2d 432, 438, 688 P.2d 136 (1984) where the Supreme Court limited Fourth Amendment guarantees below the prior federal standard we had applied by analogy to constitution article I, section 7:
Prior reliance on federal precedent and federal constitutional provisions do not preclude us from taking a more expansive view of Const. art. 1, § 7, where the United States Supreme Court determines to further limit federal guaranties in a manner inconsistent with our prior pronouncements.
State v. Jackson, 102 Wash.2d at 439, 688 P.2d 136 (citing cases). Cf. Parrish v. West Coast Hotel Co., 185 Wash. 581, 55 P.2d 1083 (1936), aff'd, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937) (State Supreme Court rejects United States Supreme Court precedent to sustain minimum wage law against constitutional challenge.).
When interpreting the state constitutional suspension clause ("The privilege of the writ of habeas corpus shall not be suspended, unless in case of rebellion or invasion the public safety requires it," Const. art. I, § 13), we have stated, absent any Gunwall analysis, "[r]ather than examining the allegedly mutable parameters of the federal suspension clause, this court has looked to the scope of the common law privilege at the time of our state suspension clause's enactment...." In re Runyan, 121 Wash.2d 432, 441, 853 P.2d 424 (1993). And in City of Tukwila v. Nalder, 53 Wash.App. 746, 770 P.2d 670 (1989), the Court of Appeals correctly observed:
Thus, while interpretation of the parallel federal constitutional provisions may provide guidance in interpreting our own, we must ultimately rely on the hierarchy of values and principles that have been developed under the Washington Constitution.
Id. at 749-50, 770 P.2d 670. Additionally, this court interprets
the state constitution in the only manner which appears to us to be reasonable in the light of the historical background which its framers and the people who adopted it necessarily must have had in mind at that time.
Langlie, 45 Wash.2d at 109, 273 P.2d 464.
By tying the state constitutional provision to the Supreme Court's various constructions of the similar federal clause, this majority violates the "cardinal rule" of constitutional construction:
"A cardinal rule in dealing with constitutions is that they should receive a consistent and uniform interpretation, so that they shall not be taken to mean one thing at one time and another thing at another time, even though the circumstances may have so changed...."
State ex rel. Munro v. Todd, 69 Wash.2d 209, 214, 417 P.2d 955, 426 P.2d 978 (1966) (quoting State ex rel. Banker v. Clausen, 142 Wash. 450, 454, 253 P. 805 (1927)). This rule precludes this court from doing exactly what the majority has done, construing a statute to have one constitutional consequence on one day, but another constitutional consequence on another:
"In accordance with this principle [the "cardinal rule" as stated above], a court should not allow the facts of the particular case to influence its decision on a question of constitutional law, nor should a statute be construed as constitutional in some cases and unconstitutional in others involving like circumstances and conditions. Furthermore, constitutions do not change with the varying tides of public opinion and desire. The will of the people therein recorded is the same inflexible law until changed by their own deliberative action; and therefore the courts should never allow a change in public sentiment to influence them in giving a construction to a written constitution not warranted by the intention of its founders."
State ex rel. Lemon v. Langlie, 45 Wash.2d 82, 110, 273 P.2d 464 (1954) (quoting Clausen, 142 Wash. at 454, 253 P. 805, which quoted with approval 6 R.C.L. 46.).
*715 Justice Madsen aptly discerned the pitfalls of tying state constitutional interpretation to federal decisions:
When this state's analysis is tied to the whims of the federal courts, state law may have to be modified frequently to adjust to later circuit splits on the issue and the United States Supreme Court's retraction of its earlier decisions. Judicial efficiency will be lost because every time the Supreme Court changes its mind, this court will be called to revisit the issue. Finality is also sacrificed because state decisions tied to federal law may be open to reversal by the Supreme Court. Most importantly, independent state constitutional analysis is lost somewhere in the ever-shifting shadow of the federal courts which are no less political and perhaps more so than our own state courts.
State v. Gocken, 127 Wash.2d 95, 110-11, 896 P.2d 1267 (1995) (Madsen, J., concurring in part, dissenting in part) (citations omitted). As Justice Madsen correctly perceived, our State followed an independent double jeopardy analysis pursuant to our state constitution long before the United States Supreme Court even purported to apply the federal double jeopardy analysis to states through the Fourteenth Amendment in 1969. See Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).
Justice Johnson's dissenting opinion in Gocken, which complemented Justice Madsen's concurrence, cites with favor State v. Jackson, 102 Wash.2d 432, 688 P.2d 136 (1984) for the proposition that "this court refused to follow the shifting sands of federal jurisprudence when interpreting Const. art. I, § 7, instead maintaining a strong commitment to independent state constitutional analysis." Gocken, 127 Wash.2d at 113, 896 P.2d 1267 (Johnson, J., dissenting). Justice Johnson further noted this court's independent interpretation of article I, section 9
has developed parallel to Fifth Amendment jurisprudence, not in reliance on it. That our interpretation has been the same as or similar to Federal Fifth Amendment jurisprudence is a result of this court's reliance on the common law and on the history of double jeopardy in Anglo-American criminal law.... Therefore, unless we now intentionally decide to proceed in lockstep with federal double jeopardy analysis [recent federal cases] [are] of no consequence to this court's interpretation of article I, section 9.
Gocken, 127 Wash.2d at 114, 896 P.2d 1267 (Johnson, J., dissenting) (footnote omitted).
Allowing federal precedent to rewrite our state constitution invites "the Court to choose the lowest common denominator of individual rights." Utter, supra, at 496 (citing Project Report, Toward an Activist Role for State Bills of Rights, 8 Harv. C.R.-C.L. L.Rev. 271, 293-96 (1973)). But as Justice Utter stated, state constitutions were originally intended as the primary device to protect individual rights, whereas the United States Bill of Rights was intended as a secondary layer. Utter, supra. The majority stands this rule designed to enhance, not compromise, civil liberties on its head.
Even where the state and federal constitutions use the identical language, "the intent could be quite different," id. at 498, and "lawyers and judges should avoid the easy and well-worn path of searching for answers in federal cases," id. at 505.
Ordinary rules of textual and constitutional interpretation, as well as the logic of federalism, require that meaning be given to the differences in language between the Washington and the United States Constitutions, and that even identically worded provisions be interpreted independently unless a very good historical justification for assuming that the framers intended an identical meaning can be found.
Utter, supra, at 515-16 (citing Young v. Konz, 91 Wash.2d 532, 539, 588 P.2d 1360, 1364 (1979) (holding that federal precedent regarding due process was not controlling with regard to state due process, even though the state and federal due process clauses were identically worded)). Compare Commonwealth v. Peterfield, 415 Pa.Super. 313, 609 A.2d 540, 551-52 (1992) (Elliott, J., dissenting) ("Even though a state constitutional provision has been interpreted as co-extensive with a federal constitutional provision, `[w]hen confronted with a change in federal precedent a state court need not, *716 however, continue to adhere to the concept of co-extensiveness.'") (quoting Bruce Ledewitz, The State Constitution Assumes New Importance, 7 Pa. L.J. Rep. 1, 10 (Nov. 5, 1984)).[12]
Yet the majority sets forth no historical justification whatsoever for claiming our state constitutional provision means something different in 1997 than it did in 1994 and 1995, much less in 1889 when it was popularly ratified. The majority forgets the admonition of Chief Justice John Marshall: "[W]e must never forget, that it is a constitution we are expounding." McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 407, 4 L.Ed. 579 (1819).
Even were we to assume the 1889 ratifying public understood the article I, section 9 double jeopardy clause to mean exactly as the federal clause, it must have understood the federal clause in light of the United States Supreme Court precedent of that daynot 107 years later. We credit these men with brilliance but not precognition.
In point of fact there was reason to believe federal jurisprudence of that time considered similar forfeitures punishment for federal double jeopardy purposes. See, e.g., Chouteau, 102 U.S. at 611 and Boyd v. United States, 116 U.S. at 633-34, 6 S.Ct. at 534 ("We are also clearly of opinion that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offences committed by him, though they may be civil in form, are in their nature criminal.") (see discussion ante at 711).[13]
I would reaffirm the fundamental principle that our constitution means the same now as it did in 1889, and neither this court, nor much less the federal judiciary, is vested with any authority whatsoever to change it. Necessarily embraced within this principle is the realization that a change in the manner in which federal courts construe the federal constitution neither is, nor should be, any justification whatsoever to overrule binding state precedent construing our state constitution. If seizure of a car used to transport drugs under RCW 69.50.505(a) raised a state constitutional double jeopardy bar to a subsequent criminal prosecution yesterday, it does no less today. Our constitution has changed not one wit in the interim, nor has it been overtaken by "events." Men perhaps, but not events.
If the majority does worry about a "judicial maelstrom," perhaps it best seek refuge under the shelter provided by the principles of our constitution rather than striking out to lose its way in the dark and stormy night.
Mary Catlett was "punished" when the State seized her car for the alleged criminal drug violation. Double jeopardy bars a subsequent punishment, or even proceeding, for the same underlying act. The Court of Appeals was clearly correct. I would affirm.
JOHNSON, MADSEN and ALEXANDER, JJ., concur.
NOTES
[1] Catlett was also charged on April 29, 1994 with separate counts of delivery and possession relating to events occurring on November 18-19, 1993. Catlett has not appealed these separate charges and they are not at issue here. See State v. Catlett, 81 Wash.App. 791, 793 n. 1, 916 P.2d 975 (1996).
[2] See Double Jeopardy: The Civil Forfeiture Debate, 19 SEATTLE U.L.REV. 209-88 (1996); see also cases decided prior to Ursery, including, e.g., Ninth Circuit decisions in United States v. $405,089.23 U.S. Currency, 33 F.3d 1210 (9th Cir. 1994), reversed by United States v. Ursery, ___ U.S. ____, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); United States v. One 1978 Piper Cherokee Aircraft, Tail No. N 5538V, Including its Tools and Appurtenances, 37 F.3d 489 (9th Cir. 1994), opinion withdrawn and superseded on rehearing (in light of Ursery ), 91 F.3d 1204 (9th Cir. 1994); and federal supplement decisions in Oakes v. United States, 872 F.Supp. 817 (E.D.Wash.1994), order reversed by unpublished opinion (in light of Ursery), 92 F.3d 1195 (9th Cir.1996); United States v. McCaslin, 863 F.Supp. 1299 (W.D.Wash.1994).
[3] Since being decided on June 24, 1996, Ursery has been relied upon by the Courts of Appeals in holding that civil forfeiture does not bar a subsequent criminal proceeding on double jeopardy grounds. See, e.g., State v. Lynch, 84 Wash.App. 467, 929 P.2d 460 (1996); Tellevik v. Real Property Known as 6717 100th Street S.W. Located in Pierce County, 83 Wash.App. 366, 370-71, 921 P.2d 1088 (1996).
[4] The dissent in Cole also approved this analytical approach: "... double jeopardy analysis in [civil forfeiture] cases involves three inquiries: (a) whether the forfeitures at issue constituted `punishment'; and, if so, (b) whether the forfeiture and criminal proceedings against each Petitioner constituted separate `proceedings' (c) arising from the `same offense.'" Cole, 128 Wash.2d at 294, 906 P.2d 925 (Johnson, J., dissenting) (citations omitted).
[5] Likewise, the Court of Appeals cases cited by Catlett do not advance her argument as none of them address double jeopardy issues. See Kahler v. Kernes, 42 Wash.App. 303, 308, 711 P.2d 1043 (1985), applying the rule of lenity because "[RCW 69.50.505(a)(4)] is a penal statute, although civil in form," citing, One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), which held the Fourth Amendment (exclusionary rule) applies to state forfeiture proceedings; and quotes Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, which characterizes civil forfeiture as "criminal proceedings for all the purposes of the Fourth Amendment." None of these cases addresses double jeopardy issues.

See also Irwin v. Mount, 47 Wash.App. 749, 751, 737 P.2d 277, review denied, 108 Wash.2d 1031 (1987), which does not address double jeopardy issues, but cites to Kahler and Deeter for the proposition that RCW 69.50.505 is a penal statute although civil in form. See also Franklin v. Klundt, 50 Wash.App. 10, 11, 746 P.2d 1228 (1987), which does not address double jeopardy issues, but cites to Deeter and Plymouth Sedan for the proposition that "[a] forfeiture proceeding under RCW 69.50.505 is quasi-criminal in nature and the Fourth Amendment exclusionary rule applies, precluding the use of illegally obtained evidence to sustain the forfeiture." See also Kinder v. Mangan, 57 Wash.App. 840, 844, 790 P.2d 652, review denied, 115 Wash.2d 1018, 802 P.2d 127 (1990), a Sixth Amendment (compulsory process) case, which cites to Deeter, noting:
Generally, the right to compulsory process is a right granted to the accused in criminal prosecutions only. The proceeding here, though quasi-criminal in nature because of its punitive aspects, is not a criminal prosecution.... Therefore, the full panoply of constitutional rights does not attach.
Kinder, 57 Wash.App. at 844, 790 P.2d 652 (citations omitted). The Kinder court also cites 89 Firearms for the proposition that "civil forfeiture [is] not deemed criminal action for double jeopardy purposes." Id. See also City of Lynnwood v. $128.00 Cash, 61 Wash.App. 505, 512-13, 810 P.2d 1377 (1991), which does not address double jeopardy issues, but references Deeter and Kinder for the view that "[a]lthough forfeiture proceedings are not criminal prosecutions, they are still quasi-criminal since their purpose is to penalize individuals who are illegally involved with controlled substances," and holding that "the seizure and forfeiture provisions of the UCSA are `criminal laws' for purposes of RCW 10.93.070" (i.e. regarding the powers of peace officers). Thus, the Lynnwood police have power to institute forfeiture actions. None of these cases addresses civil forfeitures as punishment for double jeopardy purposes.
[6] United States v. One Assortment of 89 Firearms, 465 U.S. 354, 361, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984) ("The time has come to clarify that neither collateral estoppel nor double jeopardy bars a civil, remedial forfeiture proceeding initiated following an acquittal on related criminal charges.").
[7] See also Kansas v. Hendricks, ___ U.S. ____, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), finding controlling the manifest intent of the Kansas Legislature to create a civil commitment scheme in the Kansas Sexually Violent Predator Act. It could not be shown by the "clearest proof" that the Kansas scheme was so punitive in purpose or effect as to negate legislative intention to deem it civil. Hendricks, ___ U.S. at ____, 117 S.Ct. at 2082. The Court found the involuntary commitment pursuant to the Act was civil in nature and thus not punishment, even though detention was allowed after service of a prison term. The statue did not violate the double jeopardy clause.
[8] See Laws of 1989, ch. 271, § 211 at 1298 which states:

The legislature finds that: Drug offenses and crimes resulting from illegal drug use are destructive to society; the nature of drug trafficking results in many property crimes and crimes of violence; state and local governmental agencies incur immense expenses in the investigation, prosecution, adjudication, incarceration, and treatment of drug-related offenders and the compensation of their victims; drug-related offenses are difficult to eradicate because of the profits derived from the criminal activities, which can be invested in legitimate assets and later used for further criminal activities; and the forfeiture of real assets where a substantial nexus exists between the commercial production or sale of the substances and the real property will provide a significant deterrent to crime by removing the profit incentive of drug trafficking, and will provide a revenue source that will partially defray the large costs incurred by government as a result of these crimes. The legislature recognizes that seizure of real property is a very powerful tool and should not be applied in cases in which a manifest injustice would occur as a result of forfeiture of an innocent spouse's community property interest.
[9] We do note, however, that the statute must still be analyzed in accordance with Eighth Amendment principles. To the extent civil forfeiture constitutes an excessive fine, it will be invalid. Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).
[1] I exclude from the issue property which is unlawful contraband or proceeds of criminal activity. This seizure and criminal prosecution arise from the same facts. The trial court made a finding to this effect and that finding is not challenged. See Trial Court's Findings of Fact and Conclusions of Law Re: Motion to Dismiss for Violation of Double Jeopardy, Conclusion of Law 10, at 10 ("[T]he only facts which made forfeiture of Ms. [Catlett's] vehicle a possibility [were] the transport or delivery of a controlled substance....").
[2] Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).
[3] Deeter v. Smith, 106 Wash.2d 376, 378, 721 P.2d 519 (1986) ("Clearly then, forfeiture proceedings brought pursuant to this statute are quasi criminal in nature since their purpose is to penalize individuals who participate in the illegal transportation of controlled substances."); State v. Clark, 124 Wash.2d 90, 97, 875 P.2d 613 (1994) (forfeiture of motor home under same statute "is `punishment' for purposes of federal double jeopardy analysis."); compare distinction from proceeds: State v. Cole, 128 Wash.2d 262, 279, 906 P.2d 925 (1995) ("We hold that so long as the forfeited property is proceeds of an illegal drug transaction, there is no punishment for purposes of double jeopardy.").

That our court at least previously understood such to be the true meaning of the Fifth Amendment is beyond dispute yet the majority deals with such precedent (Clark) by simply overruling it. Majority at 701, 703. Even the author of the majority opinion wrote just last year prior to publication of Ursery jeopardy may attach to civil forfeiture: "Because, depending on the nature of the property seized, such [civil] forfeitures may be punishment, jeopardy attaches. As a result, subsequent criminal convictions for the substantive drug offense charged at the time of the seizure may be barred by double jeopardy." Philip A. Talmadge, Preface: Double Jeopardy in Washington and Beyond, 19 Seattle U.L.Rev. 209, 215 (1996) (footnote omitted). See also State v. Cole, 128 Wash.2d 262, 285 n. 18, 906 P.2d 925 (1995) (Talmadge, J.) ("[C]ivil forfeiture of property other than proceeds is a punishment....").
[4] Christine P. Fontana, Comment, The "New/Old" Concept of Civil Forfeiture and Punishment: An Eye for an Eye, a Tooth for a Tooth ... a Mobile Home and a Body Shop for Two Grams of Cocaine, 42 Loy. L.Rev. 769, 787 (1997) ("The bottom line to the disparity of labeling and language when visiting the civil forfeiture arena revolves around an interesting concept: civil forfeiture due to narcotics violations is the money-making darling of the government. The government can, in effect, economically gain from a double punishment by punishing property with any connection to the drug activity, along with subjecting its owner to imprisonment and other fines normally included in criminal proceedings.").
[5] 21 U.S.C. § 881(a)(7) permits forfeiture of "All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment...."

21 U.S.C. § 881(a)(4) permits forfeiture of "All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]...."
[6] Washington law has always allowed the return of proceeds of a crime. See State v. Cramer, 167 Wash. 159, 163, 8 P.2d 1004 (1932) ("Rem. Comp. Stat. § 2288 [...] provides: `A conviction of crime shall not work a forfeiture of any property, real or personal, or of any right or interest therein.' Certainly it would not be contended that to take stolen goods from a convicted thief and return them to the rightful owner, would be a violation of § 2288, supra."). Washington law has permitted confiscation of property which is per se unlawful. See, e.g., Code of 1881, § 968(2) (law enforcement may seize illegal gaming apparatus intended for illegal gaming).
[7] Clark, 124 Wash.2d at 98-100, 875 P.2d 613 ("[I]f the civil forfeiture statute is at all punitive, it is to be deemed `punishment.'").
[8] These sections provide 10 percent of the forfeiture shall go to the state general fund with the remainder to drug-related law enforcement.
[9] I would also dispute this statute "is designed to reimburse government for its prosecutorial costs." There is neither evidence nor claim in this record that forfeited property necessarily, much less coincidentally, bears any relationship whatsoever to prosecutorial costs in general, much less to Ms. Catlett. Indeed, the only criterion for forfeiture is that the property fits within the class of property subject to forfeiture, not that it approximates the costs of the subsequent criminal prosecution nor, for that matter, that there be any criminal prosecution at all.
[10] State v. Ridgley, 70 Wash.2d 555, 556, 424 P.2d 632 (1967); State v. Gocken, 127 Wash.2d 95, 896 P.2d 1267 (1995).
[11] Such authority requires no further detailed analysis as per State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986) to require adherence under the rule of stare decisis. State v. Boland, 115 Wash.2d 571, 800 P.2d 1112 (1990) (once the court has determined that a state constitutional provision provides specific protection a full Gunwall analysis is not required); State v. Richman, 85 Wash.App. 568, 573, 933 P.2d 1088 (1997) (same); State v. Gocken, 127 Wash.2d 95, 109-10, 896 P.2d 1267 (1995) (Madsen, J., concurring in part, dissenting in part) (Gunwall analysis unnecessary where state constitutional provision has been independently interpreted); State v. Thorne, 129 Wash.2d 736, 785, 921 P.2d 514 (1996) (same).
[12] Commonwealth v. Carroll, 427 Pa.Super. 1, 628 A.2d 398, 406 (1993) (Cavanaugh, J., concurring) noted the passage quoted in the Peterfield dissent partially states "`a lower Pennsylvania court must treat an analogous state constitutional claim as a matter of independent constitutional interpretation....'" (quoting Peterfield, 609 A.2d at 552 (Ford-Elliott, J., dissenting) (quoting Bruce Ledewitz, The State Constitution Assumes New Importance, 7 Pa. L.J. Rep. 1, 10 (November 5, 1984))).
[13] Justice Kennedy's concurrence in Ursery, ___ U.S. at ____, 116 S.Ct. at 2150, acknowledges language in Boyd is inconsistent with Ursery. Since we have acknowledged the language of Const. art. I, § 7 was derived from the Supreme Court decision in Boyd (City of Seattle v. McCready, 123 Wash.2d 260, 270, 868 P.2d 134 (1994)), such is all the more reason to prefer an independent interpretation of our constitution.